Frederick W. Kosmo, Jr. (State Bar No. 138036)
Wilson Turner Kosmo LLP
550 West C Street, Suite 1050
San Diego, CA 92101-3532
619-236-9600
619-236-9669 (fax)
fkosmo@wilsonturnerkosmo.com

Attorneys for Plaintiff NATURAL
ALTERNATIVES INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., | Case No. 3:16-cv-1764-AJB-BLM |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR TRADEMARK, COPYRIGHT AND PATENT INFRINGEMENT AND CIVIL CONSPIRACY** |
| v. | |
| ALLMAX NUTRITION, INC., HBS INTERNATIONAL CORP. and DOES 1-100, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Case 3:16-cv-1764-AJB-BLM

FIRST AMENDED COMPLAINT

Plaintiff, Natural Alternatives International, Inc. ("NAI") hereby brings this First Amended Complaint against defendants, Allmax Nutrition, Inc. ("Allmax") and HBS International Corp. ("HBS") (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1. NAI sells its branded CarnoSyn® beta-alanine, an amino acid, to customers throughout the United States and in other countries. NAI's product is covered by a robust portfolio of trademark, copyright and patent rights. Allmax and HBS, which offer to sell and sell dietary supplements containing beta-alanine, has engaged in acts of trademark, copyright and patent infringement, all designed to improperly boost its sales and intentionally interfere with NAI's expanding CarnoSyn® business. NAI files this action to stop Defendants from intentionally and willfully infringing upon NAI's intellectual property rights and wrongfully interfering with NAI's CarnoSyn® beta-alanine business.

## PARTIES

2. NAI is a Delaware corporation with its principal place of business in San Marcos, California.

3. Allmax is a Canadian corporation with its principal place of business located at 4576 Yonge St., Suite 509, North York, Ontario, Canada.

4. HBS is a Canadian corporation with its principal place of business located at 4576 Yonge St., Suite 509, North York, Ontario, Canada. It also has an office in Carson City, Nevada.

5. The true names and capacities, whether individual, corporate, associate or otherwise of defendants sued herein as DOES 1-100, inclusive, are unknown to NAI at the present time and NAI therefore sues such defendants by fictitious names. NAI will amend this complaint, by leave of Court if necessary, to show such true names and capacities when the same have been ascertained. Such

defendants will include contract manufacturers and brands that do not buy beta-alanine from NAI and/or commingle beta-alanine and then use it to manufacture dietary supplements for brands, offer to sell or sell the finished products to end users, and/or the end users.

## JURISDICTION AND VENUE

6. This is an action for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*., and patent infringement arising under Title 35 of the United States Code, 35 U.S.C. §§ 1, *et seq*.

7. Exclusive subject matter jurisdiction over this action is conferred upon the Court pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121(a), and supplemental jurisdiction under 28 U.S.C. § 1367.

8. The exercise of jurisdiction over Allmax comports with the laws of the State of California and the constitutional requirements of due process because Allmax transacts business and offers to transact business within California. It operates an interactive website that is accessible by citizens and residents of California. *See* Ex. A (Allmax Homepage). For example, the website contains a copyright notice for Allmax. Further, part of its website states: "At ALLMAX Nutrition, we are committed to protecting your privacy and want you to feel comfortable using our website. Please take a moment to read this Statement to understand how ALLMAX Nutrition collects, uses and discloses the personal information you provide to us." Allmax goes on to say: "If you would like us to update your contact information or remove your name from our mailing list, or if you have any questions or concerns about ALLMAX Nutrition's privacy practices or about your personal information, please contact us at support[at]allmaxnutrition[dot]com." *See* http://www.allmaxnutrition.com/privacy-

policy (last visited Oct. 18, 2016). The "terms of use" portion of the website states, in part:

> By using allmaxnutrition.com you agree to be bound by these terms, which shall take effect immediately on your first use of allmaxnutrition.com. If you do not agree to be bound by all of the following terms please do not access, use and/or contribute to allmaxnutrition.com.
>
> ALLMAX Nutrition may change these terms from time to time and so you should check these terms regularly. Your continued use of allmaxnutrition.com will be deemed acceptance of the updated or amended terms. If you do not agree to the changes, you should cease using this website.

*See* http://www.allmaxnutrition.com/terms-of-use (last visited Oct. 18, 2016). Allmax also sells and offers to sell its products through retailers located in California, including without limitation, GNC and Vitamin Shoppe retail stores in the Southern District of California. See Ex. B (List of American Retailers from Website). Allmax represents to the public that it creates dietary supplement products offered for sale. *See, e.g.*, ¶30, *infra*. Further, HDS' contacts with California are properly attributable to Allmax. HDS and Allmax conduct their business as a single enterprise. *See, e.g.*, ¶29, *infra*. They have the same address, including suite number. *See, e.g.*, ¶¶3-4, *supra*.

9. The exercise of jurisdiction over HBS comports with the laws of the State of California and the constitutional requirements of due process because HBS transacts business and offers to transact business within California. It is a wholly-owned subsidiary or affiliate of Allmax. HBS distributes Allmax's line of products, including the products at issue here, in the United States, for purchase at a variety

of retailers in California.  Further, HBS had sought to enter into a CarnoSyn® Beta-Alanine License Agreement with NAI, located in California.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (3).

## FACTS

**A.    NAI**

11. NAI, a publicly traded company, is a leading formulator, manufacturer, marketer and supplier of nutritional supplements and provides strategic partnering services to its customers.  NAI offers a wide range of innovative nutritional products and services to its clients including: scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and evaluation, marketing management and support, packaging and delivery system design, regulatory review and international product registration assistance.  NAI also funds, sponsors, directs and participates in research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives.  The comprehensive services NAI offers and financial support for research have established NAI as an innovator in the field of nutritional science and increased the goodwill associated with NAI-authorized products.

12. NAI owns 46 patents in the United States and foreign countries related to beta-alanine. Beta-alanine is a non-essential amino acid.  In numerous scientific studies, CarnoSyn® beta-alanine, when used as a dietary supplement, has been proven to delay the onset of fatigue in muscle cells, thereby eliminating muscle fatigue and soreness and has been shown to improve athletic performance.

13. One of the inventors of the patents assigned to NAI, Dr. Roger Harris, has been recognized for his work in nutritional supplements, particularly his work in several studies using CarnoSyn® beta-alanine.  He has a lifetime achieve award from the International Society of Sports Nutrition.

14. NAI imports and sells beta-alanine to customers in the United States engaged in interstate and foreign commerce. Its beta-alanine is branded and sold under the trademark CarnoSyn®. NAI owns the entire right, title and interest to multiple trademarks, including the CarnoSyn® trademark, Serial No. 78372235 and Registration No. 3146289, a true and correct copy of which is attached as Ex. C and incorporated herein by reference, and the CarnoSyn Beta Alanine® trademark, Serial No. 85606462 and Registration No. 4271217, a true and correct copy of which is attached as Ex. D and incorporated herein by reference.

15. NAI maintains a website to promote and encourage sales of its branded CarnoSyn® beta-alanine at www.carnosyn.com, the content of which is incorporated herein by reference. The contents of the website are protected by copyrights held by NAI and the website includes a copyright notice. A true and correct copy of NAI's copyright registrations (Nos. TX 8-188-444 and TX 8-187-689) are attached as Exs. E and F and incorporated herein by reference.

16. NAI has invested and continues to expend substantial funds to build, expand and promote sales of CarnoSyn® beta-alanine. NAI pursues legal avenues to protect its CarnoSyn® brand and intellectual property portfolio.

17. When NAI sells CarnoSyn® beta-alanine to customers, the customers receive a scientifically-tested recognized product, a license to NAI's trademarks, and patents, and are indemnified against product liability. The license extends only to the CarnoSyn® beta-alanine purchased from NAI, and does not extend to CarnoSyn® beta-alanine that contains or is mixed or comingled with any non-trademarked beta-alanine.

18. By statute, NAI's 14 U.S. patents are presumed valid. 35 U.S.C. § 282. None of those patents have been held invalid by a court.

19. NAI is the owner of U.S. Patent No. 5,965,596 ("the '596 patent"), issued on or about October 12, 1999, entitled "Methods and compositions for

increasing the anaerobic working in tissues." A copy of the '596 patent is attached as Ex. G and incorporated by reference.

20.   NAI is the owner of U.S. Patent No. 7,504,376, issued on or about March 17, 2009, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues." A copy of the patent is attached as Ex. H and incorporated by reference.

21.   NAI is the owner of U.S. Patent No. 7,825,084 ("the '084 patent"), issued on or about November 2, 2010, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues." A copy of the '084 patent is attached as Ex. I and incorporated by reference.

22.   NAI is the owner of U.S. Patent No. RE45,947 ("the '947 patent"), issued on or about November 2, 2010, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues." A copy of the '947 patent is attached as Ex. J and incorporated by reference.

23.   Claim 1 of the '596 patent is directed to a method of regulating the hydronium ion concentration in human tissue by providing an amount of beta-alanine to the blood or blood plasma effective to increase beta-alanylhistidine dipeptide (carnosine) synthesis in the human tissue, exposing the human tissue to the blood or blood plasma and thereby increasing the carnosine in the human tissue.

24.   Claim 1 of the '084 patent is directed to a human dietary supplement comprising beta-alanine in a unit dosage of between 0.4 grams to 16 grams.

25.   Claim 34 of the '947 patent is directed to a human dietary supplement for increasing human muscle tissue strength comprising a mixture of creatine, a carbohydrate and free amino acid beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide, wherein the human dietary supplement does not contain a free amino acid L-histidine, wherein the free amino acid beta-alanine is in an amount that is from 0.4 g to 16.0 g per daily dose, wherein the amount increases

the muscle tissue strength in the human, and wherein the human dietary supplement is formulated for one or more doses per day for at least 14 days.

26. Claim 6 of the '376 patent is directed to a human dietary supplement comprising glycine; and a) an amino acid selected from the group consisting of a beta-alanine, an ester of a beta-alanine, and an amide of a beta-alanine, or b) a di-peptide selected from the group consisting of a beta-alanine di-peptide and a beta-alanylhistidine di-peptide.

**B.   Defendants**

27. Allmax offers to sell and sells bodybuilding and sports nutrition supplements in the United States, Canada and across the world. Some of these supplements contain beta-alanine. Defendants maintain and operate a website at www.allmaxnutrition.com, the content of which is incorporated herein by reference, to promote the sale of products.

28. HBS is the exclusive distributor of Allmax branded products in the United States, including supplement products containing beta-alanine.

29. Allmax and HBS collectively have represented to courts in other cases that:

> [Allmax and HBS] are pioneers in the nutritional supplement industry. Established on the principle that nutritional supplement products should be grounded in science, innovation, quality and results, [Defendants] manufacture, market and sell the Allmax Nutrition branded line of nutritional supplements. Every Allmax Nutrition supplement embodies [Defendants'] dedication to this core value, creating a revolutionary line of supplements that thousands of health-conscious consumers have come to know and trust.

Ex. K, ¶8 (Complaint in *Allmax Nutrition Inc. and HBS Int'l Corp. v. Bioexx Specialty Proteins Ltd.*, No. 11-CV-449 (D. Me.) (incorporated herein by

reference)); *see also* Ex. L, ¶¶8-20 (Complaint in *Allmax Nutrition Inc. and HBS Int'l Corp. v. Rivalus, Inc.No.* 2:13-cv-379 (D. Me.) (incorporated herein by reference)).

30.   Allmax also represents to the public that it creates, offers for sale and supplies dietary supplements. For example, in its Fall 2015 catalog, Allmax represents that:

> WHY ALLMAX?
>
> **Rigorous research standards yield powerful results**
>
> This has resulted in a line of products that has gained the trust of thousands of dedicated professional athletes, amateur athletes, coaches, trainers and those who have chosen to make high quality nutrition a part of their life.
>
> WE BELIEVE in dedicating ourselves to strict policies of quality in manufacturing. We maintain the absolute highest grade of manufacturing for all our products – NSF certified, cGMP compliant and government-inspected facilities featuring state-of-the-art conditions with sealed air-pressurized chambers.
>
> **A healthy obsession with purity, potency and effective formulas**
>
> WE ARE OBSESSIVE about testing and analyzing each and every batch of our product. We go well beyond the call of duty to ensure that what we put on the label is precisely what is in the product and in the required amounts and concentrations.  We employ independent, 3rd party laboratories to rigorously test every product to ensure 100% validity, potency and safety.  If even one of these strict standards is not met, the product is rejected and never makes it past this stage.

> There are cheaper and easier ways to create the supplements you consume, but we do not believe in anything less, nor will we settle for it.
>
> **High quality products provide the best results**
> OUR CUSTOMERS have had a healthy obsession with our products for more than a decade because they get results. They understand the importance of following a solid diet and training hard in combination with our high quality products. We understand that our customers demand more, which is why we consistently supply cutting-edge supplements to help them achieve their goals as quickly and effectively as possible.
>
> **The ALLMAX Nutrition® brand stands for Science, Innovation, Quality and Results**
> We continue to quietly grow through word-of-mouth recommendation, as satisfied athletes and trainers continue to tell others about their impressive results.

Ex. M at 2.

31. The products at issue are offered to and may be purchased and used by citizens of California.

32. Defendants sell and/or offer to sell Razor 8 Blast Powder, which contains beta-alanine. Ex. M (Catalog page for Razor 8 Blast Powder).

33. Defendants represent that the Razor 8 Blast Powder is licensed under one or more of U.S. Patent Nos. 5,965,596 and 6,426,361, each of which is owned by NAI. *Id.*

34. Defendants also acknowledge that NAI is the owner of the registered trademark CarnoSyn®. *Id*.

35. Defendants' website for the Razor 8 Blast Powder product states that it contains 425mg of CarnoSyn® beta-alanine. Ex. N (Razor 8 webpage).

36. Defendants' website for the Razor 8 Blast Powder product has a link to "Science," which directs the viewer to another page. This other page describes the benefits of taking beta-alanine and also uses NAI's trademark and copyrights. Ex. O (Razor 8 science).

37. Defendants sell and/or offer to sell C-VOL (CREMAGNAVOL®), which contains beta-alanine. Ex. M (Catalog page for C-VOL and CREMAGNAVOL®).

38. The C-VOL product also contains creatine and carbohydrate. *Id*.

39. The C-VOL product does not contain L-histidine. *Id*.

40. Defendants represent that the CREMAGNAVOL® product is licensed under one or more of U.S. Patent Nos. 5,965,596 and 6,426,361, each of which is owned by NAI. *Id*.

41. Defendants also acknowledge that NAI is the owner of the registered trademark CarnoSyn®. *Id*.

42. Defendants' websiteDefendants' website for the C-VOL product states that it contains 800mg of CarnoSyn® beta-alanine. Ex. P (C-VOL webpage).

43. Defendants sell and/or offer to sell Vitastack, which contains beta-alanine. Ex. M (Catalog page for Vitastack).

44. The Vitastack product also contains glycine. *Id*.

45. Defendants sell and/or offer to sell MUSCLEPRIME®, which contains beta-alanine. Ex. M (Catalog page for Muscleprime).

46. Defendants represent that the MUSCLEPRIME® product is licensed under one or more of U.S. Patent Nos. 5,965,596 and 6,426,361, each of which is owned by NAI. *Id*.

47. Defendants also acknowledge that NAI is the owner of the registered trademark CarnoSyn®. *Id*.

48. Defendants state that the "Patented CarnoSyn® Beta-Alanine in MUSCLEPRIME® promotes greater concentrations of muscle Carnosine resulting in increases in STRENGTH, POWER and MUSCLE MASS." Ex. M (Catalog at page 26).

49. Defendants also state that beta-alanine has been shown to increase anaerobic endurance and delay the onset of fatigue, "letting you train with greater intensity and duration." *Id*.

50. Defendants' website for MUSCLEPRIME® states the product contains 0.6g of CarnoSyn® beta-alanine. Ex. Q (Muscleprime website).

51. Defendants' website for the MUSCLEPRIME® product has a link to "key factors," which directs the user to another page. This other page describes the benefits of taking beta-alanine and also uses NAI's trademark and copyrights. Ex. R (Muscleprime key factors).

52. Defendants sell and/or offer to sell beta-alanine. Ex. M (Catalog at page 34).

53. Defendants' website for beta-alanine uses NAI's trademark and copyrights. Ex. S (beta-alanine webpage).

54. Defendants' website for beta-alanine has a link to "carnosyn," which directs the user to another page. This other page describes the benefits of taking beta-alanine and also uses NAI's trademark and copyrights. Ex. T (beta-alanine carnosyn).

55. Defendants' website for beta-alanine has a link to "science," which directs the user to another page. This other page describes the benefits of taking beta-alanine and also uses NAI's trademark and copyrights. Ex. T (beta-alanine science).

**C.  Defendant's Trademark Infringement**

56. Defendants use NAI's CarnoSyn® trademark on its website as alleged above. *See* Exs. O, R, S, T (CarnoSyn Use on Website).

57. Defendants are not authorized to use NAI's CarnoSyn® trademark.

**D.  Defendants' Copyright Infringement**

58. Defendants use the contents of NAI's website on its own website as alleged above. *See* Exs. O, R, S, T (copy of material from website).

59. The contents of NAI's website is protected by copyright, including registered copyrights.

60. Defendants are not authorized to use NAI's copyright.

**E.  Defendants' Patent Infringement**

61. Defendants sell sports nutrition supplements that contain beta-alanine as alleged above. *See* Exs. M-T (copy of material from website and catalog).

62. The Razor 8 Blast Powder product infringes at least claim 1 of the '084 patent because it contains between 0.4 and 16 grams of beta-alanine per unit dosage. Exs. M-O (Razor 8 Blast Powder catalog page and website).

63. The Razor 8 Blast Powder product infringes at least claim 34 of the '947 patent because it contains beta-alanine between 0.4 and 16 grams per daily dose, creatine and carbohydrate, does not contain L-histidine and is formulated for one or more doses per day for at least 14 days. Exs. M-O (Razor 8 Blast Powder catalog page and website).

64. The C-VOL product infringes at least claim 1 of the '084 patent because it contains between 0.4 and 16 grams of beta-alanine per unit dosage. Exs. M, P (C-VOL catalog page and website).

65. The C-VOL product infringes at least claim 34 of the '947 patent because it contains beta-alanine between 0.4 and 16 grams per daily dose, creatine and carbohydrate, does not contain L-histidine and is formulated for one or more doses per day for at least 14 days. Exs. M, P (C-VOL catalog page and website).

66. The Vitastack product infringes at least claim 1 of the '084 patent because it contains between 0.4 and 16 grams of beta-alanine per unit dosage. Ex. M (Vitastack catalog page).

67. The Vitastack product infringes at least claim 6 of the '376 patent because it contains glycine and the amino acid beta-alanine. *Id.* (Vitastack catalog page).

68. The MUSCLEPRIME® product infringes at least claim 1 of the '084 patent because it contains between 0.4 and 16 grams of beta-alanine per unit dosage. Exs. M, Q (Muscleprime catalog page and website).

69. The beta-alanine product infringes at least claim 1 of the '084 patent because it contains between 0.4 and 16 grams of beta-alanine per unit dosage. Exs. M, R (beta-alanine catalog page and website).

70. Defendants make statements in association with the promotion of its beta-alanine product that induce infringement of at least claim 1 of the '596 patent. For example, Defendants state that "beta-alanine is clinically proven to increase muscle carnosine for long periods, [and] increase muscle buffering capacity. . . ." Ex. S. They also state that "Muscle carnosine is the major buffering agent, or neutralizer, of hydronium ions that lead to muscle fatigue and failure. By increasing the amount of carnosine in the muscle, CarnoSyn beta-alanine both increases an

athlete's peak performance and speeds muscle recovery."  Ex. T (beta-alanine webpage Science).

### F.     Contacts With AllMax

71.     On or about June 15, 2016, NAI's counsel sent a letter to Allmax by overnight courier addressed to its President, Michael Kichuk ("Kichuck"). A copy of the letter is attached as Ex. U and is incorporated herein by reference.

72.     On or about July 5, 2016, Kichuk contacted NAI to find out who to discuss the issues raised in the cease and desist letter with at NAI.  He was told to speak to Kenneth Wolf, NAI's President.

73.     NAI also learned that contract manufacturers Arnet and Capstone had been manufacturing products containing beta-alanine for Allmax for some time.

74.     NAI filed its complaint for trademark, copyright and patent infringement and provided Allmax with a courtesy copy.  Allmax's counsel sent an email to NAI's counsel on or about July 12, 2016, writing, in pertinent part:

> Thank you for providing a courtesy copy of the complaint against Allmax Nutrition Inc. I have also obtained the extensive exhibits referenced in the complaint and have passed the material along to my client with your inquiry regrading exploring a pre-service resolution. My client's initial response is that it is interested in exploring a resolution to this matter pre-service, but it obviously needs some time to review the complaint and associated exhibits to understand the basis for NAI's allegations.

75. Counsel for NAI and Allmax later had a telephone discussion in which NAI requested information from Allmax on its products and use of beta-alanine. On or about August 11, 2016, Allmax's counsel left a voice message for NAI's counsel saying, in pertinent part:

> This is Sean Sweeney and I am calling regarding NAI and Allmax Nutrition. I wanted to follow up after our phone conversation. I finally had a chance to touch base with my contact just now. First of all they don't have the documentation or the bulk of the documentation that you're looking for at this point and one of the things that is becoming a significant problem for them is that NAI has apparently scared most of the copackers to the point where they are not really willing to provide a lot of information and so I'm not sure how my client is going to get around that.

76. At no time during any of these communications did Allmax or its representatives suggest that Allmax was not engaged in promoting, offering to sell and selling dietary supplements, including the products at issue here.

## COUNT I

### (Lanham Act § 32)

77. The foregoing allegations are incorporated by reference.

78. Defendants' products are used, sold, and/or offered for sale in interstate and foreign commerce.

79. In connection with its goods or services, Defendants have used a reproduction, counterfeit, copy, or colorable imitation of NAI's registered trademark without NAI's consent.

80. Defendants knowingly and willfully misrepresented to the public, *inter alia*, the facts alleged above.

81. Defendants used NAI's registered trademark without NAI's consent, knowing that such act is intended to be used to cause confusion, or to cause mistake, or to deceive.

82. By reason of Defendants statements and conduct, they have willfully violated section 32 of the Lanham Act, 15 U.S.C. § 1114, and NAI has suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits that it would have made but for Defendants' acts.

83. NAI has been irreparably harmed by Defendants' acts in violation of the Lanham Act and has suffered damages in an amount to be determined at trial.

## COUNT II

### (Copyright Infringement)

84. The foregoing allegations are incorporated by reference.

85. NAI's work is an original literary, design and pictorial work of authorship pursuant to 17 U.S.C. § 102(a). The copyrights in NAI's work are valid.

86. Defendants had access to NAI's work.

87. Defendants copied and distributed and used without authorization or permission NAI's work, including on exhibits attached hereto.

88. Defendants willfully violated, and continues to willfully violate, NAI's exclusive right to its protected copyright works in violation of 17 U.S.C. § 501.

89. Defendants profited from its infringement of NAI's copyrights.

90. NAI has been irreparably harmed by Defendants acts of infringement and has suffered damages in an amount to be determined at trial.

## COUNT III

### (Patent Infringement)

91. The foregoing allegations are incorporated by reference.

92. Defendants have made, used, sold, and/or offered for sale products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '084 patent, '376 patent and the '947 patent and will continue to do so unless enjoined therefrom.

93. Defendants have, through the sale of its products and promotion of such products, including instructions for the use thereof, induced others (*i.e.*, the end users of its accused products) to infringe literally or under the doctrine of equivalents, one or more claims of the '596 patent.

94. Defendants' infringement has been willful.

95. NAI has been irreparably harmed by Defendants' acts of infringement and has suffered damages in an amount to be determined at trial.

## COUNT IV

### (Civil Conspiracy)

96. The foregoing allegations are incorporated by reference.

97. At all relevant times, Allmax and HBS have acted in concert, agreed, combined and conspired for an unlawful purpose or for a lawful purpose by unlawful means, *i.e.*, to have made, sell and offer for sales products containing beta-alanine not purchased from NAI that infringe NAI's trademarks, copyrights and patents.

98. Defendants have committed one or more overt tortious or illegal acts in furtherance of their conspiracy, as alleged herein.

99. An overt act by one member of the conspiracy is chargeable to all members.

-17-   Case 3:16-cv-1764-AJB-BLM
FIRST AMENDED COMPLAINT

100. Defendants' agreement and overt acts were done intentionally and with malice

101. NAI did not authorize Defendants to use its intellectual property rights for products that did not contain CarnoSyn® beta-alanine..

102. As a direct and proximate result of the civil conspiracy, NAI has been injured by Defendants in an amount to be proven at trial in excess of $75,000.

## REQUEST FOR RELIEF

NAI respectfully requests that this Court enter judgment against Defendants and that the following relief be granted:

- a. judgment that Defendants have violated section 32 of the Lanham Act;
- b. treble damages and statutory damages;
- c. a preliminary and permanent injunction against continued violations of the Lanham Act;
- d. punitive damages allowed by law;
- e. attorneys' fees as allowed by law, including without limitation, 15 U.S.C. § 1117(a);
- f. judgment that Defendants have violated 17 U.S.C. § 501;
- g. statutory damages pursuant to 17 U.S.C. § 504;
- h. reasonable costs and attorneys' fees pursuant to 17 U.S.C. § 505
- i. a preliminary and permanent injunction against continued violations of NAI's copyrights;
- j. judgment that Defendants have infringed one or more claims of the '596, '084, '376 and '947 patents;
- k. judgment that Defendants' infringement of one or more claims of the '596, '084, 376 and '947 patents was willful;
- l. injunction against continued infringement (35 U.S.C. § 283);
- m. damages for past infringement (35 U.S.C. § 284);

n.   imposition of a constructive trust on all proceeds from the sale of accused products;

o.   increased and trebled damages for willful infringement (35 U.S.C. § 284);

p.   judgment for civil conspiracy in an amount to be determined at trial in excess of $75,000.

q.   costs pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

r.   such other relief as the Court deems just and appropriate under the circumstances.

## JURY DEMAND

NAI hereby demands a jury trial on all issues so triable.

Dated: October 19, 2016

Respectfully submitted,

Wilson Turner Kosmo LLP

By: s/ Frederick W. Kosmo, Jr.
Wilson Turner Kosmo LLP

*Attorneys for Plaintiff Natural Alternatives International. Inc.*

Of Counsel:

Kevin M. Bell
Richard J. Oparil
W. John McKeague
Porzio, Bromberg & Newman, P.C.
1200 New Hampshire Ave., NW, Suite 710
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)