# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALLMAX NUTRITION, INC.; HBS INTERNATIONAL CORP.; and DOES 1-100, <br><br> Defendants. | Case No.: 16-cv-01764-H-AGS <br><br> **ORDER:** <br><br> **(1) GRANTING DEFENDANT ALLMAX'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT HBS'S MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND; AND** <br><br> [Doc. Nos. 43, 44.] <br><br> **(2) DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> [Doc. No. 57.] |

On April 25, 2017, Defendant Allmax Nutrition, Inc. filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and Defendant HBS International Corp. filed a motion to dismiss Plaintiff Natural Alternatives International, Inc.'s first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc.

Nos. 43, 44.) On May 19, 2017, Plaintiff filed an opposition to Defendants' motions. (Doc. No. 56.) On June 2, 2017, Defendants filed a reply. (Doc. No. 59.)

On May 22, 2017, Plaintiff NAI filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 57.) On June 12, 2017, Defendants filed an opposition to Plaintiff's motion. (Doc. No. 61.) On June 19, 2017, Plaintiff filed its reply. (Doc. No. 62.)

The Court held a hearing on the matters on June 26, 2017. Richard J. Oparil, William J. McKeague, and Frederick W. Kosmo appeared for Plaintiff NAI. Ragesh K. Tangri appeared for Defendants Allmax and HBS. For the reasons below, the Court denies Plaintiff's Rule 12(c) motion, and the Court grants Defendants' Rule 12 motions with partial leave to amend.

## Background

The following facts are taken from the allegations in Plaintiff's first amended complaint. Plaintiff NAI is a formulator, manufacturer, marketer, and supplier of nutritional supplements. (Doc. No. 11, FAC ¶ 11.) Plaintiff sells its branded CarnoSyn® beta-alanine product to customers throughout the United States and in other countries. (Id. ¶ 1.) Plaintiff alleges that its CarnoSyn® product is covered by a robust portfolio of trademark, copyright, and patent rights. (Id.)

Plaintiff alleges that Defendants Allmax and HBS International Corp. offer to sell and sell dietary supplements containing beta-alanine in the United States, including through retailers located in California. (Id. ¶¶ 1, 8-9, 27-31.) Plaintiff further alleges that Defendants' website utilizes Plaintiff's trademarks and copyrights in the marketing of Defendants' beta-alanine products. (Id. ¶¶ 31-55.) Plaintiff alleges that these acts constitute trademark, copyright, and patent infringement. (Id. ¶¶ 77-95.)

On July 8, 2016, Plaintiff filed a complaint against Defendant Allmax, alleging claims for: (1) violation of the Lanham Act § 32; (2) copyright infringement; and (3) patent infringement. (Doc. No 1.) On October 13, 2016, Defendant Allmax filed a motion to dismiss Plaintiff's complaint for lack of personal jurisdiction. (Doc. No. 9.) In response

to Allmax's motion to dismiss, on October 19, 2016, Plaintiff filed a first amended complaint adding HBS as an additional defendant and alleging the same causes of action as in the original complaint and adding a claim for civil conspiracy. (Doc. No. 11.) In light of Plaintiff's first amended complaint, on October 20, 2016, the Court denied Defendant Allmax's motion to dismiss Plaintiff's original complaint as moot. (Doc. No. 13.)

On November 16, 2017, Defendant Allmax filed a motion to dismiss Plaintiff's first amended complaint for lack of personal jurisdiction. (Doc. No. 18.) On February 21, 2017, the Court denied Allmax's motion to dismiss for lack of personal jurisdiction. (Doc. No. 32.) On March 14, 2017, Defendant Allmax filed counterclaims and an answer to Plaintiff's first amended complaint. (Doc. No. 33.)

By the present motions, Defendant Allmax moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and Defendant HBS moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) as to Plaintiff's claims for violation of Lanham Act § 32, patent infringement, and civil conspiracy.[1] (Doc. Nos. 43-1 at 1, 44-1 at 1.) In addition, Plaintiff moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Defendant Allmax's fourth affirmative defense and second counterclaim raising invalidity of the patents-in-suit. (Doc. No. 57-1 at 2.)

## Discussion

## I. Legal Standards for a Rule 12(b)(6) Motion to Dismiss and a Rule 12(c) Motion for Judgment on the Pleadings

In patent cases, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are both governed by the applicable law of the regional circuit. K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1282 (Fed. Cir.

---

[1] Defendants do not move to dismiss or for judgment on the pleadings as to Plaintiff's claim for copyright infringement.

2013); <u>Amdocs (Israel) Ltd. v. Openet Telecom, Inc.</u>, 841 F.3d 1288, 1293 (Fed. Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief containing "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. <u>See</u> <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1241 (9th Cir. 2011).

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings." The Ninth Circuit has explained that the standard for deciding a Rule 12(c) motion "is 'functionally identical'" to the standard for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (quoting <u>Dworkin v. Hustler Magazine Inc.</u>, 867 F.2d 1188, 1192 (9th Cir. 1989)); <u>accord</u> <u>Chavez v. United States</u>, 683 F.3d 1102, 1108 (9th Cir. 2012).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." <u>Mendiondo v. Centinela Hosp.</u>

Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). But, a court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, it is improper for a court to assume the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

## II. Plaintiff's Rule 12(c) Motion for Judgment on the Pleadings[2]

In its answer, Defendant Allmax alleges as its fourth affirmative defense and second counterclaim that each and every asserted claim from the patents-in-suit is invalid. (Doc. No. 33 at 31, 35.) Plaintiff moves for judgment on the pleadings as to Allmax's invalidity affirmative defense and counterclaim. (Doc. No. 57-1 at 2.) Specifically, Plaintiff argues that Allmax may not assert this affirmative defense and counterclaim because the Defendants are parties to two license agreements with Plaintiff that contain provisions prohibiting Defendants from contesting the validity of Plaintiff's patents. (Id. at 4-5.) In response, Defendants argue that the no-contest provisions contained in the license agreements are void as against public policy. (Doc. No. 61 at 3-6.) In reply, Plaintiff argues that the no-contest provisions are valid and enforceable. (Doc. No. 62 at 2-7.)

The parties agree that they have entered into two license agreements, one in 2014 and one in 2016.[3] (Doc. No. 57-1 at 2; Doc. No. 61 at 2; see Doc. No. 57-3, Oparil Decl.

---

[2] The Court notes that although Defendants' motions were filed prior to Plaintiff's Rule 12(c) motion, it is appropriate to address the arguments and issues presented in Plaintiff's motion first because Plaintiff's motion addresses the threshold issue of whether Defendants can raise the invalidity arguments presented in their Rule 12 motions.

[3] The Court may consider these two license agreements in deciding Plaintiff's Rule 12(c) motion because they are documents referenced in and relied on in the pleadings, and no party questions their authenticity. See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); Lee v. City of Los Angeles,

5

Ex. A.)  The 2014 agreement contains a provision stating: "[Defendants] will not contest or aid others in contesting the validity, enforceability or NAI's ownership of and/or rights in the Patent Rights and Trademark Rights."[4]  (Doc. No. 57-3, Oparil Decl. Ex. A at Ex. 1 ¶ 6.)  The 2016 agreement similarly contains a provision stating: "[Defendants] will not contest or aid others in contesting the validity, enforceability or NAI's ownership of and/or rights in the Patent Rights and Trademark Rights."  (Id. at Ex. 2 ¶ 5.)

Federal Circuit law governs the determination of whether an agreement bars a party from challenging the validity of a patent.  See Baseload Energy, Inc. v. Roberts, 619 F.3d 1357, 1361 (Fed. Cir. 2010); Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1365 (Fed. Cir. 2001).  "In Lear, Inc. v. Adkins, 395 U.S. 653 (1969), the Supreme Court eliminated the doctrine of 'licensee estoppel,' citing the 'important public interest in permitting full and free competition in the use of ideas.'  Under Lear, a licensee of a patent is not estopped from challenging the validity of the licensed patent by virtue of the license agreement."  Baseload, 619 F.3d at 1361.  Nevertheless, the Federal Circuit subsequently has held that certain "consent decrees and settlement agreements may at one and the same time provide for a patent license while barring challenges to patent invalidity and unenforceability" and that Lear does not render such agreements void.  Baseload, 619 F.3d at 1361; see, e.g., Flex-Foot, 238 F.3d at 1370.

Plaintiff argues that the 2016 agreement between the parties qualifies for the Federal Circuit's settlement agreement exception to Lear.  (Doc. No. 62 at 4-7.)  Defendants argue that the 2016 agreement is unenforceable under Lear because only a post-litigation

---

250 F.3d 668, 688 (9th Cir. 2001); Shame on You Prods., Inc. v. Elizabeth Banks, 120 F. Supp. 3d 1123, 1144 (C.D. Cal. 2015).

[4]      The agreement defines the term "Patent Rights" as "the rights of NAI in information, discoveries, concepts, techniques, designs, processes, technology and inventions claimed in the following United States patents, any reissues, reexaminations, or extensions, continuations, continuations-in-part, or divisionals of any of the following United States patents, and any international counterparts to the following United States patents, including the inventions and discoveries described, covered and claimed therein and foreign equivalents identified under Section I at http://www.carnosyn.com/patents."  (Doc. No. 57-3, Oparil Decl. Ex. A at Ex. 1 ¶ 2.)

settlement can qualify for the Federal Circuit's exception to <u>Lear</u>. (Doc. No. 61 at 5 n.1) The Court agrees with Defendants.

In <u>Rates Tech. Inc. v. Speakeasy, Inc.</u>, 685 F.3d 163, 167-74 (2d Cir. 2012), the Second Circuit engaged in an extensive analysis of Supreme Court and Federal Circuit case law on this issue and held that a no-contest clause contained in a pre-litigation settlement agreement is unenforceable under <u>Lear</u>, regardless of whether the agreement is styled as a settlement agreement or a license agreement. <u>Id.</u> at 172; <u>see also</u> <u>Ocean Tomo, LLC v. PatentRatings, LLC</u>, No. 12 C 8450, 2017 WL 2588430, at *9 (N.D. Ill. June 14, 2017) (holding same). The Court acknowledges that Federal Circuit law, not Second Circuit law, governs the determination of whether an agreement bars a party from challenging the validity of a patent. <u>See</u> <u>Baseload</u>, 619 F.3d at 1361; <u>Flex-Foot</u>, 238 F.3d at 1365. Nevertheless, the Court finds the Second Circuit's decision in <u>Rates Tech.</u> well-reasoned and persuasive and, therefore, the Court will apply its holding to the present case.

Plaintiff asserts that a no-contest clause in a pre-litigation settlement agreement can be enforceable if the clause contains clear and unambiguous language barring the licensee's ability to challenge a patent's validity. (Doc. No. 62 at 3.) In making this assertion, Plaintiff relies on the Federal Circuit's decision in <u>Baseload</u> and the district court decision <u>Ocean Tomo, LLC v. Barney</u>, 133 F. Supp. 3d 1107, 1119 (N.D. Ill. 2015). The Court does not find Plaintiff's reliance on these two cases persuasive.

First, in <u>Baseload</u>, the Federal Circuit never held that a no-contest clause in a pre-litigation settlement agreement can be enforceable. In <u>Baseload</u>, the Federal Circuit was faced with a situation where the parties had entered into a settlement agreement containing a no-contest clause following prior litigation between the parties, but the validity of the relevant patent was not at issue during that prior litigation. <u>See</u> 618 F.3d at 1359-60. In analyzing the issues in that case, the Federal Circuit explained that "[i]n the context of settlement agreements, as with consent decrees, clear and unambiguous language barring the right to challenge patent validity in future infringement actions is sufficient, even if invalidity claims had not been previously at issue and had not been actually litigated." <u>Id.</u>

at 1363. Here, the Federal Circuit merely stated that in order for a no-contest clause in a litigation-settlement agreement to be enforceable, the validity of the patent-in-suit need not have been actually litigated by the parties in the prior litigation. The <u>Baseload</u> decision says nothing about the situation where there was no litigation at all between the parties at the time they entered into the relevant agreement. In addition, the Court notes that in <u>Baseload</u>, the Federal Circuit ultimately declined to enforce the no-contest clause at issue. <u>Id.</u> at 1358, 1363-64. Second, although the district court in <u>Ocean Tomo</u> initially held that a no-contest clause in a pre-litigation settlement agreement can be enforceable, <u>Ocean Tomo</u>, 133 F. Supp. 3d at 1121, that district court subsequently revisited that holding and later held, instead, that a no-challenge clause "as a provision in a pre-litigation agreement . . . is not enforceable." <u>Ocean Tomo</u>, 2017 WL 2588430, at *9. In sum, the Court agrees with the Second Circuit's analysis in <u>Rates Tech.</u> and holds that a no-contest clause contained in a pre-litigation settlement agreement is unenforceable under <u>Lear</u>.

Here, Defendants assert that the relevant agreements were entered into prior to any litigation between the parties. (Doc. No. 61 at 5 n.1.) Plaintiff does not contest this assertion and concedes that the "the 2016 Agreement was a pre-suit settlement." (Doc. No. 62 at 6.) Indeed, the Court notes that Plaintiff states that the 2016 agreement was executed on June 7, 2016, (<u>id.</u> at 5), but the present action was not filed until July 8, 2016. (Doc. No. 1.) Thus, both the 2014 agreement and the 2016 agreement are pre-litigation settlement agreements and, therefore, the no-contest provisions in those agreements are unenforceable under <u>Lear</u>.[5] See <u>Rates Tech.</u>, 685 F.3d at 172; <u>Ocean Tomo</u>, 2017 WL 2588430, at *9.

Because the no-contest clauses contained in the relevant agreements are unenforceable, Plaintiff is not entitled to judgment on the pleadings as to Defendant

---

[5] Moreover, the Court rejects Plaintiff's contention that under Delaware law, a contract should be enforced according to its terms. (Doc. No. 62 at 7.) As Plaintiff acknowledges, Federal Circuit law, not Delaware law, governs the determination of whether a no-contest clause in an agreement bars a party from challenging the validity of a patent. <u>See</u> <u>Baseload</u>, 619 F.3d at 1361; <u>Flex-Foot</u>, 238 F.3d at 1365. (Doc. No. 62 at 2 n.1.)

Allmax's invalidity affirmative defense and counterclaim. Accordingly, the Court denies Plaintiff's Rule 12(c) motion for judgment on the pleadings. [6]

## III. Defendants' Rule 12 Motions

### A. Plaintiff's Lahnam Act Claim

In the FAC, Plaintiff alleges a claim against Defendants for violation of Lanham Act § 32. (Doc. No. 11, FAC ¶¶ 56-57, 77-83.) Defendants argue that this claim should be dismissed because Plaintiff has failed to adequately allege that Defendants are using Plaintiff's trademark in conjunction with the sale of unauthorized products. (Doc. No. 43-1 at 5-8; Doc. No. 44-1 at 5-8.)

To establish a claim for trademark infringement under the Lanham Act, a plaintiff must demonstrate: "(1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers." Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006); see 15 U.S.C. § 1114(1)(a). "The core element of trademark infringement is whether customers are likely to be confused about the source or sponsorship of the products." Reno Air Racing Ass'n., 452 F.3d at 1135. Likelihood of confusion "exists 'whenever consumers are likely to assume that a mark is associated with another source.'" Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848, 854 (9th Cir. 2002). In analyzing likelihood of confusion, courts utilize the eight-factor test set forth in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir.1979). Multi Time Mach., Inc. v. Amazon.com, Inc., 804 F.3d 930, 936 (9th Cir. 2015).

In their motion, Defendants argue that Plaintiff's allegations as to its trademark claim are inadequate because Plaintiff fails to specifically allege in the FAC that the beta-alanine in Defendants' accused products with CarnoSyn® on the label came from an

---

[6] In its motion, Plaintiff also moves to strike the invalidity arguments contained in Defendants' Rule 12 motions based on the no-contest clauses in the parties' agreements. (Doc. No. 57-1 at 2.) Because the no-contest clauses contained in the relevant agreements are unenforceable, the Court also denies Plaintiff's motion to strike.

unauthorized source, i.e., a source other than NAI or its authorized seller Compound Solutions, Inc. (Doc. No. 59 at 3; Doc. No. 43-1 at 6; Doc. No. 44-1 at 6.) In response, at the hearing, Plaintiff argued that it is able to allege such conduct by Defendants and that this issue could appropriately be addressed through amendment of the allegations in the FAC. Accordingly, in light of this, the Court grants Defendants' motions and dismisses Plaintiff's trademark claim without prejudice and with leave to amend.

## B. Plaintiff's Claim for Patent Infringement

In the FAC, Plaintiff alleges a claim against Defendants for patent infringement, alleging infringement of U.S. Patent No. 5,965,596, U.S. Patent No. 7,504,376, U.S. Patent No. 7,825,084, and U.S. Patent No. RE45,947. (Doc. No. 11, FAC ¶¶ 19-26, 61-70, 91-95.) Defendants argue that the Court should dismiss Plaintiff's patent infringement claim because the patents-in-suit fail to claim patent-eligible subject matter and, therefore, are invalid under 35 U.S.C. § 101. (Doc. No. 43-1 at 8-18; Doc. No. 44-1 at 8-18.) In response, Plaintiff argues that the patents-in-suit are directed to patent-eligible subject matter.[7] (Doc. No. 56 at 12-23.)

### i. Legal Standards for Patent Eligibility under § 101

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "'long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable.'" Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013). "The concern underlying these judicial exclusions is that 'patent law not inhibit further discovery by improperly tying up

---

[7] Plaintiff also argues that Defendants are precluded from contesting the validity of the patents-in-suit in light of the no-contest clauses contained in the parties' agreements. (Doc. No. 56 at 11-12.) But, as explained in ruling on Plaintiff's Rule 12(c) motion, the no-contest clauses contained in the relevant agreements are void under Lear. See supra section II. Accordingly, Defendants are not prohibited from arguing that the patents-in-suit are invalid under § 101.

16-cv-01764-H-AGS

the future use of these building blocks of human ingenuity.'" Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1047 (Fed. Cir. 2016).

"The Supreme Court has devised a two-stage framework to determine whether a claim falls outside the scope of section 101." Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1257 (Fed. Cir. 2016); see Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347, 2355 (2014). "The prescribed approach requires a court to determine (1) whether the claim is directed to a patent-ineligible concept, i.e., a law of nature, a natural phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim into a patent-eligible application." Affinity Labs, 838 F.3d at 1257 (internal quotation marks omitted) (citing Alice, 134 S. Ct. at 2355).

The first step of the Alice inquiry requires courts "to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." Id. at 1257. "The [second] step requires [courts] to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed. Id. at 1258. "This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'" FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1093 (Fed. Cir. 2016).

The Federal Circuit has expressly recognized that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion [or a Rule 12(c) motion]."[8] Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1373 (Fed. Cir. 2016); see, e.g., Amdocs, 841 F.3d at 1293 (reviewing eligibility under § 101 on an appeal

---

[8] In its opposition, Plaintiff cites to a district court decision holding that "[r]arely can a patent infringement suit be dismissed at the pleading stage for lack of patentable subject matter." Bristol-Myers Squibb Co. v. Merck & Co., No. CV 15-560-GMS, 2016 WL 1072841, at *1 (D. Del. Mar. 17, 2016). (Doc. No. 56 at 15.) The Court does not find Plaintiff's citation to this district court decision persuasive as it was issued prior to and is contrary to the Federal Circuit's decision in Genetic Techs.

from a grant of judgment on the pleadings under Rule 12(c)); see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1347 (Fed. Cir. 2016) ("Courts may . . . dispose of patent-infringement claims under § 101 whenever procedurally appropriate."). Further, the Federal Circuit has explained that where there is "no claim construction dispute relevant to the eligibility issue," evaluation of a patent claim's subject matter eligibility under § 101 can proceed before claim construction.[9] Genetic Techs., 818 F.3d at 1373; see Cleveland Clinic Found. v. True Health Diagnostics LLC, No. 2016-1766, __ F.3d __, 2017 WL 2603137, at *6 (Fed. Cir. June 16, 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."); see also Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.").

### ii. The '084 Patent

Claim 1 of the '084 patent[10] claims: "A human dietary supplement, comprising a

---

[9]      In its opposition, Plaintiff asserts that there may be certain claim construction disputes between the parties that would be relevant to the Court's evaluation of the patents-in-suit's eligibility under § 101. (Doc. No. 56 at 19-22.) But, in response, Defendants state that for the purposes of deciding this motion, Defendants will accept Plaintiff's proposed claim constructions. (Doc. No. 59 at 8.) Accordingly, the Court may decide the § 101 issues in this case prior to claim construction because there are no claim construction disputes relevant to the eligibility issue. See Genetic Techs., 818 F.3d at 1373.

[10]      In the FAC, Plaintiff expressly references claim 1 of the '084 Patent, claim 1 of the '596 patent, claim 34 of the '947 patent, and claim 6 of the '376 patent. (Doc. No. 11, FAC ¶¶ 23-26.) In analyzing the validity of the patents-in-suit under § 101, Defendants primarily focus on these four specific claims and argue that a § 101 validity analysis can be performed based on representative claims. (Doc. No. 44-1 at 10-11.) In its opposition, Plaintiff does not contest this specific assertion by Defendants or Defendants' use of representative claims in their § 101 analysis, and Plaintiff's own § 101 analysis also focuses on these four specific claims. (See Doc. No. 56 at 18-22.) Accordingly, in evaluating the validity of the patents-in-suit under § 101, the Court will focus on claim 1 of the '084 Patent, claim 1 of the '596 patent, claim 34 of the '947 patent, and claim 6 of the '376 patent as representative claims. Cf. Cleveland Clinic, __ F.3d __, 2017 WL 2603137, at *5 ("Where, as here, the claims 'are substantially similar and linked to the same' law of nature, analyzing representative claims is proper."); Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (explaining that the district court "correctly determined that addressing each claim of the asserted patents was unnecessary" because "all the claims are 'substantially similar and linked to the same abstract idea'" and, thus, the district court properly used representative claims in its § 101 analysis).

beta-alanine in a unit dosage of between about 0.4 grams to 16 grams, wherein the supplement provides a unit dosage of beta-alanine." U.S. Patent No. 7,925,084 at 22:26-29 (filed Nov. 2, 2010). The Court begins its analysis of this claim with step one of the <u>Alice</u> inquiry. "The step one inquiry focuses on determining 'whether the claim at issue is 'directed to' a judicial exception, such as an abstract idea.'" <u>Apple, Inc. v. Ameranth, Inc.</u>, 842 F.3d 1229, 1241 (Fed. Cir. 2016). This inquiry requires courts "to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." <u>Affinity Labs</u>, 838 F.3d at 1257.

Here, claim 1 of the '084 patent claims a human dietary supplement containing beta-alanine in a unit dosage of 0.4 to 16 grams. Beta-alanine is the only ingredient of the supplement referenced in the language of claim 1. <u>See</u> '084 Patent at 22:26-29. Thus, beta-alanine is the focus of the claim.[11] In its specification, the '084 patent explains that beta-alanine is an amino acid, <u>id.</u> at 3:3-6, and is "present in the muscles of humans and other vertebrates." <u>Id.</u> at 2:21-26; <u>see also id.</u> at 8:49-53 ("These precursors[, beta-alanine and L-histidine], can be generated within the body or are made available via the diet."). (<u>See also</u> Doc. No. 11, FAC ¶ 12; Doc. No. 56 at 16.) Thus, the '084 patent acknowledges that beta-alanine is a natural occurring phenomenon.[12] Accordingly, claim 1 of '084 patent

---

[11]    That beta-alanine is the focus of the claimed invention is also supported by language in the '084 Patent's specification. In describing the invention, the specification explains:

    The invention provides methods of increasing anaerobic working capacity in a tissue, comprising the following steps: (a) providing a beta-alanylhistidine dipeptide and a glycine, an insulin, an insulin mimic, or an insulin-action modifier; and (b) administering the beta-alanine and at least one of the glycine, insulin mimic, or insulin-action modifier to the tissue in an amount effective to increase beta-alanylhistidine dipeptide synthesis in the tissue, thereby increasing the anaerobic working capacity in the tissue.

'084 Patent at 2:45-53. Here, the specification describes the invention as being directed to providing and administering beta-alanine along with another substance in order to increase the anaerobic working capacity in tissue.

[12]    In light of this, the Court does not find persuasive Plaintiff's reliance on <u>Rutgers v. Qiagen N.V.</u>, No. 15CV7187PGSLHG, 2016 WL 828101 (D.N.J. Feb. 29, 2016). (Doc. No. 56 at 17.) In that case, the district court found it at least plausible that the claimed invention "uses artificial conditions that do

16-cv-01764-H-AGS

is directed to excluded subject matter – specifically beta-alanine, a natural phenomenon – thereby satisfying step one of the Alice inquiry.  See, e.g., Ariosa Diagnostics, Inc. v. Sequenom, Inc., 788 F.3d 1371, 1376 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2511 (2016) (finding step one of the Alice inquiry satisfied where the claims were directed to cffDNA, a naturally occurring phenomenon).

Plaintiff argues that a human dietary supplement containing beta-alanine is not a natural phenomenon, and, therefore, the claim is directed to patent-eligible subject matter. (Doc. No. 56 at 17-18, 19-20, 21-22.)  But in making this argument, Plaintiff misconstrues the step one analysis for determining subject matter eligibility under § 101.  Step one of the § 101 inquiry does not simply look to whether the overall claimed invention is itself a natural phenomenon.  Rather, step one of the inquiry requires a court to look at what the claim is specifically directed to and whether what it is directed to is a natural phenomenon, law of nature, or abstract idea.  For example, a computer is a physical machine and is not itself an abstract idea.  Nevertheless, in Alice, the Supreme Court found that the claims at issue were directed to an abstract idea – specifically, "the concept of intermediated settlement" – even though all of the claims were implemented using a computer.  See 134 S. Ct. at 2352-53, 2355; see also id. at 2358  ("The fact that a computer 'necessarily exist[s] in the physical, rather than purely conceptual, realm,' is beside the point.").  Similarly, here, claim 1 is directed to the natural phenomenon beta-alanine even though the claim is implemented using a "human dietary supplement."[13]  Because claim 1 is directed to a

---

not occur in nature."  Rutgers, 2016 WL 828101, at *3.  In contrast, here, the specification of the '084 patent provides that beta-alanine occurs naturally within the human body.

[13]     Plaintiff also argues that when beta-alanine is isolated from the dipeptide, carnosine, beta-alanine has different properties than carnosine.  (Doc. No. 56 at 22-23.)  But Plaintiff fails to support this assertion with any citation to the intrinsic record of the patents-in-suit or extrinsic evidence.  Further, even assuming Plaintiff is correct, this fact would not alter the Court's § 101 analysis.  In Myriad, the Supreme Court rejected the argument that the claims at issue were "saved by the fact that isolating DNA from the human genome severs chemical bonds and thereby creates a nonnaturally occurring molecule."  Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2118 (2013); see In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig., 774 F.3d 755, 760 (Fed. Cir. 2014).

natural phenomenon, the Court will now turn to step two of the <u>Alice</u> inquiry.

In step two, the reviewing court "examine[s] the elements of the claims to determine whether they contain an inventive concept sufficient to transform the claimed naturally occurring phenomena into a patent-eligible application." <u>Cleveland Clinic</u>, 2017 WL 2603137, at \*7. The court "must consider the elements of the claims both individually and as an ordered combination to determine whether additional elements transform the nature of the claims into a patent-eligible concept." <u>Id.</u> Further, the inventive concept contained in the claim "must do more than simply recite 'well-understood, routine, conventional activity.'" <u>FairWarning IP, LLC v. Iatric Sys., Inc.</u>, 839 F.3d 1089, 1093 (Fed. Cir. 2016); <u>see</u> <u>Intellectual Ventures I LLC v. Symantec Corp.</u>, 838 F.3d 1307, 1313 (Fed. Cir. 2016) ("'[S]imply appending conventional steps, specified at a high level of generality,' which are 'well known in the art' and consist of 'well-understood, routine, conventional activit[ies]' previously engaged in by workers in the field, is not sufficient to supply the inventive concept.").

Here, the inventive concept described in claim 1 of the '084 patent is placing a specific dosage of beta-alanine into a human dietary supplement. <u>See</u> '084 Patent at 22:26-29. The '084 patent acknowledges that placing a natural substance into a dietary supplement is conventional activity. The background section of the specification of the '084 patent provides:

> Natural food supplements are typically designed to compensate for reduced levels of nutrients in the modern human and animal diet. In particular, useful supplements increase the function of tissues when consumed. It can be particularly important to supplement the diets of particular classes of animals whose normal diet may be deficient in nutrients available only from meat and animal products . . . .

<u>Id.</u> at 1:37-44. Because placing a natural substance into a dietary supplement is a

---

Similarly, here, the Court rejects Plaintiff's contention that isolating beta-alanine from carnosine is sufficient to render the claims subject matter eligible and not directed to a natural phenomenon.

conventional activity, employing a dietary supplement to administer the beta-alanine, a natural phenomenon, is insufficient to render claim 1 patent eligible. See, e.g., Ariosa, 788 F.3d at 1377 (holding that utilizing routine and convention methods for amplifying and detecting cffDNA, a natural phenomenon, was insufficient to render the claims at issue patent eligible); Alice, 134 S. Ct. at 2357-58 (holding that the introduction of a general-purpose computer to implement an abstract idea was insufficient to render the claims at issue patent eligible); Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 78-82 (2012) (finding the steps of administering a drug and then reconsidering the dosage in light of a natural law insufficient to render the claims at issue patent eligible). Accordingly, representative claim 1 of '084 patent is directed to patent-ineligible subject matter, and, thus, is invalid under 35 U.S.C. § 101.

Plaintiff argues that the claimed invention of providing the amino acid beta-alanine in effective amounts to a human does not preempt the natural law of regulating hydronium ion concentration in human tissue. (Doc. No. 56 at 18-19, 21-22.) But the Federal Circuit has explained that "[w]hile preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility." Ariosa, 788 F.3d at 1379. "Where a patent's claims are deemed only to disclose patent ineligible subject matter under the Mayo[/Alice] framework, . . . preemption concerns are fully addressed and made moot." Id.; accord Cleveland Clinic, 2017 WL 2603137, at *8. Here, under the two-step Alice framework, representative claim 1 of the '084 patent only discloses patent ineligible subject matter. Thus, any potential preemption concerns are fully addressed through that analysis.[14] See id. In sum, the '084 patent is invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter.

///

---

[14] The Court notes that while the Court addresses and rejects Plaintiff's preemption argument in its analysis of the '084 patent, the Court's analysis and rejection of this particular argument applies equally to the other patents-in-suit.

16-cv-01764-H-AGS

### iii. The '947 Patent

Claim 34 of the '947 patent claims:

> A human dietary supplement for increasing human muscle tissue strength comprising a mixture of creatine, a carbohydrate and free amino acid beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide, wherein the human dietary supplement does not contain a free amino acid L-histidine, wherein the free amino acid beta-alanine is in an amount that is from 0.4 g to 16.0 g per daily dose, wherein the amount increases the muscle tissue strength in the human, and wherein the human dietary supplement is formulated for one or more doses per day for at least 14 days.

U.S. Patent No. RE45,947 at 16:1-11 (filed Mar. 29, 2016). The Court begins its analysis of this claim with step one of the Alice inquiry. Claim 34 claims a human dietary supplement containing a mixture of beta-alanine, creatine, and a carbohydrate.[15] Beta-alanine is a naturally occurring phenomenon. See '947 Patent at 2:9-15, 5:21-25. In addition, the specification of the '947 patent discloses that creatine is also a naturally occurring phenomenon. See id. at 1:50-55 ("Creatine . . . is found in large amounts in skeletal muscle and other 'excitable' tissues (e.g., smooth muscle, cardiac muscle, or spermatozoa) . . . .). Further, a carbohydrate is also a naturally occurring phenomenon. See id. at 3:33-34, 5:61-63, 6:57-58. Thus, claim 34 is directed to excluded subject matter, specifically the natural phenomena of beta-alanine, creatine, and carbohydrates. See, e.g., Ariosa, 788 F.3d at 1376. Accordingly, step one of the Alice inquiry is satisfied, and the Court will turn to step two.

In Funk Bros. Seed Co. v. Kalo Inoculant Co., 333 U.S. 127, 130-31 (1948), the Supreme Court held that mixing different natural phenomena together – specifically, in that case different bacterial species – is insufficient to render an invention patent eligible even though it was not previously known that the substances could be mixed together, and

---

[15] The Court notes that claim 34 of the '947 patent is similar to claim 1 of '084 patent, except that claim 34 of the '947 also includes creatine in the dietary supplement. Accordingly, the Court's analysis as to the eligibility of claim 1 of the '084 patent also applies to its analysis of claim 34 of the '947 patent.

16-cv-01764-H-AGS

the combination provided certain advantages. Thus, in the present case, mixing beta-alanine, a natural phenomenon, with a carbohydrate and creatine, two other natural phenomena, and placing that mixture in a human dietary supplement, a conventional activity, is insufficient to render claim 34 patent eligible. See id. Accordingly representative claim 34 of '947 patent is directed to patent-ineligible subject matter, and, thus, is invalid under 35 U.S.C. § 101.

### vi.   The '376 Patent

Claim 6 of the '376 Patent is dependent from Claim 5 which is dependent from Claim 1. Those three claims provide:

> 1. A composition, comprising:
>
> glycine; and
>
> a) an amino acid selected from the group consisting of a beta-alanine, an ester of a beta-alanine, and an amide of a beta-alanine, or
>
> b) a di-peptide selected from the group consisting of a beta-alanine di-peptide and a beta-alanylhistidine di-peptide.
>
> . . .
>
> 5. The composition of claim 1, wherein the composition is a dietary supplement or a sports drink.
>
> 6. The composition of claim 5, wherein the dietary supplement or sports drink is a supplement for humans.

U.S. Patent No. 7,504,376 at 22:27-47 (filed Mar. 17, 2009). The Court begins its analysis of this claim with step one of the Alice inquiry. Claim 6 of the '376 patent claims a human dietary supplement containing a mixture of beta-alanine and glycine.[16] Beta-alanine is a

---

[16]   The Court notes that claim 6 of the '376 patent is similar to claim 34 of the '947 patent except that the dietary supplement claimed in claim 6 of the '376 patent contains a mixture of beta-alanine and glycine, rather than beta-alanine, creatine, and a carbohydrate. Accordingly, the Court's analysis as to the eligibility of claim 1 of the '084 patent and claim 34 of the '947 patent also applies to its analysis of claim 6 of the '376 patent.

naturally occurring phenomenon.  <u>See</u> '376 Patent at 2:15-20, 8:51-55.  In addition, the specification of the '376 patent discloses that glycine is also a naturally occurring phenomenon.[17]  <u>See id.</u> at 1:56-61, 6:1-5.  Thus, claim 6 is directed to excluded subject matter, specifically beta-alanine, a natural phenomenon, and glycine, a natural phenomenon.  <u>See, e.g.</u>, <u>Ariosa</u>, 788 F.3d at 1376.  Accordingly, step one of the <u>Alice</u> inquiry is satisfied, and the Court will turn to step two.

Under the Supreme Court's decision in <u>Funk Bros.</u>, mixing beta-alanine, a natural phenomenon, with glycine, a natural phenomenon, and placing that mixture in a human dietary supplement, a conventional activity, is insufficient to render claim 6 patent eligible. <u>See</u> <u>Funk Bros.</u>, 333 U.S. at 130-31.  Accordingly representative claim 6 of '376 patent is directed to patent-ineligible subject matter, and, thus, is invalid under 35 U.S.C. § 101.

### v.     The '596 Patent

Claim 1 of the '596 patent claims:

A method of regulating hydronium ion concentrations in a human tissue comprising:

providing an amount of beta-alanine to blood or blood plasma effective to increase beta-alanylhistidine dipeptide synthesis in the human tissue; and

exposing the tissue to the blood or blood plasma, whereby the concentration of beta-alanylhistidine is increased in the human tissue.

---

[17]     Plaintiff argues that the term "glycine" in claim 6 should be construed to include glycine from other sources, i.e., non-natural sources.  (Doc. No. 56 at 20 (citing '376 Patent at 6:8-11).)  But even assuming Plaintiff is correct, and the term "glycine" in claim 6 encompasses both non-natural and natural glycine, that would still mean that natural glycine, a naturally occurring phenomenon, would be included with the scope of claim 6.  Further, as Defendants correctly note, Plaintiff has failed to identify any meaningful difference between glycine derived from other sources and natural glycine.  (Doc. No. 59 at 9.)  In <u>In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.</u>, 774 F.3d 755, 760 (Fed. Cir. 2014), the Federal Circuit held that claims directed to DNA primers were ineligible under § 101 even though the primers "are synthetically replicated" because the primers "are structurally identical to the ends of DNA strands found in nature."  Thus, without Plaintiff identifying some meaningful difference between natural glycine and synthetic glycine, the fact that the claimed glycine might be derived from other sources is insufficient to render claim 6 patent eligible.

16-cv-01764-H-AGS

U.S. Patent No. 5,965,596 at 14:66-15:6 (filed Oct. 12, 1999). The Court begins its analysis of this claim with step one of the <u>Alice</u> inquiry. Claim 1 of the '596 patent claims a method of regulating hydronium ion concentrations in human tissue by provided the amino acid beta-alanine to human tissue via blood or blood plasma thereby increasing the carnosine content in the tissue. <u>See id.</u> (Doc. No. 56 at 18.) The Court agrees with Defendants that this claim is directed to a law of nature, specifically the principle that ingesting beta-alanine, a natural substance, will increase carnosine concentration in tissue and, thereby, aid in regulating the hydronium ion concentration in the tissue.[18] <u>See</u> <u>Mayo</u>, 566 U.S. at 77 (finding that claims at issue were directed to laws of nature); <u>Genetic Techs.</u>, 818 F.3d at 1374-76; <u>see also</u> <u>Ariosa</u>, 788 F.3d 1at 1376 ("The method therefore begins and ends with a natural phenomenon."). Because claim 1 of the '596 patent is directed to a law of nature, the Court will now turn to step two of the <u>Alice</u> inquiry.

Turning to step two of the <u>Alice</u> inquiry, the elements contained in claim 1 of '596 patent do not disclose an inventive concept sufficient to transform the claimed law of nature into a patent-eligible application. The Court agrees with Defendants that the language in claim 1 does nothing more than simply state the law of nature and add the words apply it to human tissue. Specifically, the language in claim 1 simply acknowledges the natural law that providing beta-alanine to human tissue will increase the carnosine concentration in the tissue and aid in regulating hydronium ion concentration, and then merely instructs to do so. This is insufficient to render the claim patent-eligible. <u>See</u> <u>Ariosa</u>, 788 F.3d at 1377 ("<u>Mayo</u> made clear that transformation into a patent-eligible application requires 'more than simply stat[ing] the law of nature while adding the words 'apply it.'"); <u>Mayo</u>, 566 U.S. at 77 ("If a law of nature is not patentable, then neither is a process reciting a law of nature.").

Plaintiff argues that claim 1 of the '596 patent is directed to eligible subject matter

---

[18] This law of nature is disclosed in the specification of the '596 patent. <u>See</u> '596 Patent at 2:10-13, 4:58-5:26.

because the claimed method increases the carnosine content in the tissue through a non-natural process.  (Doc. No. 56 at 16, 18.)  But Plaintiff fails to adequately explain how or why this is actually true.  There is nothing in the claim language requiring that the carnosine concentration achieved by the method be at unnatural levels.  Moreover, there is nothing in the claim language requiring that the beta-alanine used in the method come from non-natural sources, and, thus, the claim appears to encompass natural methods of exposing beta-alanine to human tissue and, thereby, increasing the carnosine content in the tissue.

Plaintiff also states that the patents-in-suit discloses a new and useful method of increasing the amount of carnosine in muscles.  (Doc. No. 56 at 16.)  But even assuming this is true, this is insufficient to render the claims at issue patent eligible.  The Supreme Court has explained that "[g]roundbreaking, innovative, or even brilliant discovery does not by itself satisfy the § 101 inquiry."  Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2117 (2013); see also Ariosa, 788 F.3d at 1379–80 ("While Drs. Lo and Wainscoat's discovery regarding cffDNA may have been a significant contribution to the medical field, that alone does not make it patentable."); Genetic Techs., 818 F.3d at 1380 ("[Plaintiff]'s attempts to distinguish this case on the ground that the method of claim 1 is useful have no basis in case law or in logic.  Claim 1 stands rejected under § 101 as ineligible for claiming unpatentable subject matter, not for lack of utility.  The method claims of Mayo and Ariosa were apparently also useful, and also invalid.").  In sum, representative claim 1 of the '596 patent is directed to patent-ineligible subject matter, and, thus, is invalid under 35 U.S.C. § 101.

### vi.    35 U.S.C. § 101 Conclusion

In sum, the patents-in-suit claim ineligible subject matter and, thus, are invalid under 35 U.S.C. § 101.  Accordingly, the Court grants Defendants' Rule 12 motions with respect to this claim, and the Court dismisses Plaintiff's claim for patent infringement with prejudice.

///

///

21

C.    Plaintiff's Claim for Civil Conspiracy

In the FAC, Plaintiff alleges a claim against Defendants for civil conspiracy.  (Doc. No. 11, FAC ¶¶ 96-102.)  Defendants argue that this claim should be dismissed because it fails to state a claim under state law.  (Doc. No. 43-1 at 18-19; Doc. No. 44-1 at 18-19.)

"Under California law, there is no separate and distinct tort cause of action for civil conspiracy."  Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1228 (9th Cir. 1997); see Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510 (1994) ("Conspiracy is not a cause of action.").  Rather, it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510–11 (1994).

Plaintiff's civil conspiracy claim must be dismissed.  First, because the Court has dismissed Plaintiff's claims for trademark infringement and patent infringement, those claims cannot serve as an underlying tort for Plaintiff's civil conspiracy claim.  See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 311 (4th Cir. 2012) ("If the underlying tort is dismissed for any reason, so, too, must the corresponding conspiracy claim be dismissed."); Ramos v. Ramos, No. 16-15459, 2017 WL 2333970, at *1 (9th Cir. May 30, 2017); see also Applied Equip. Corp., 7 Cal. 4th at 511 ("Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort.").  Second, a patent-based civil conspiracy claim and a copyright-based civil conspiracy claim both fail as a matter of law because they are both preempted by federal law.  See Int'l Rectifier Corp. v. Samsung Elecs. Co., 361 F.3d 1355, 1361 (Fed. Cir. 2004) ("[C]onspiracy to infringe a patent . . . has no basis in law."); Conceal City, L.L.C. v. Looper Law Enf't, LLC, 917 F. Supp. 2d 611, 618 (N.D. Tex. 2013) (collecting cases and holding that "federal patent law preempts the civil conspiracy claim of patent infringement."); Tire Eng'g & Distribution, 682 F.3d at 311 ("[Plaintiff]'s claim for conspiracy to infringe its copyrights is preempted by the Copyright Act."); Benke v. Departure Agency, Inc., No. CV 11-397-VBF(VBKX), 2011 WL 13129964, at *2 (C.D.

22

Cal. Aug. 11, 2011) (collecting cases and stating "courts both within and outside of this Circuit have held that state law civil conspiracy claims based on copyright infringement are preempted by the Copyright Act"). Nevertheless, because the Court has granted Plaintiff leave to amend its claim for trademark infringement, the Court will also grant Plaintiff leave to amend its civil conspiracy claim. Accordingly, the Court grants Defendants' motions and dismisses Plaintiff's civil conspiracy claim without prejudice and with leave to amend.

## Conclusion

For the reasons above, the Court denies Plaintiff's Rule 12(c) motion for judgment on the pleadings, and the Court grants Defendants' Rule 12 motions with partial leave to amend. Specifically, the Court dismisses Plaintiff's claim for patent infringement with prejudice because the patents-in-suit are invalid under 35 U.S.C. § 101 for failing to claim patent-eligible subject matter, and the Court dismisses Plaintiff's trademark claim and its civil conspiracy claim without prejudice and with leave to amend. The Court grants Plaintiff leave to file a second amended complaint within **fourteen (14) days** from the date this order is filed.

**IT IS SO ORDERED.**

DATED: June 26, 2017

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

16-cv-01764-H-AGS