WILSON TURNER KOSMO LLP
FREDERICK W. KOSMO, JR. (138036)
HUBERT KIM (204957)
550 West C Street, Suite 1050
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: hkim@wilsonturnerkosmo.com

KEVIN M. BELL (admitted *pro hac vice*)
RICHARD J. OPARIL (admitted *pro hac vice*)
W. JOHN MCKEAGUE (admitted *pro hac vice*)
SCOTT A.M. CHAMBERS, Ph.D. (admitted *pro hac vice*)
PORZIO, BROMBERG & NEWMAN, P.C.
1200 New Hampshire Ave., NW, Suite 710
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)
E-mail: kmbell@pbnlaw.com
E-mail: rjoparil@pbnlaw.com
E-mail: wjmckeague@pbnlaw.com
E-mail: sachambers@pbnlaw.com

Attorneys for Plaintiff
NATURAL ALTERNATIVES INTERNATIONAL INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALLMAX NUTRITION, INC., HBS INTERNATIONAL CORP. and DOES 1-100,<br><br>Defendants. | Case No. 3:16-cv-01764-H-AGS<br><br>**SECOND AMENDED COMPLAINT FOR TRADEMARK, COPYRIGHT AND PATENT INFRINGEMENT AND CIVIL CONSPIRACY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Natural Alternatives International, Inc. ("NAI") hereby brings this Second Amended Complaint against defendants, Allmax Nutrition, Inc. ("Allmax") and HBS International Corp. ("HBS") (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1.     NAI sells its branded CarnoSyn beta-alanine, an amino acid, to customers throughout the United States and in other countries.  NAI's product is covered by a robust portfolio of trademark, copyright and patent rights.  Allmax and HBS, which offer to sell and sell dietary supplements containing beta-alanine, has engaged in acts of trademark, copyright and patent infringement[1], all designed to improperly boost its sales and intentionally interfere with NAI's expanding CarnoSyn business.  NAI files this action to stop Defendants from intentionally and willfully infringing upon NAI's intellectual property rights and wrongfully interfering with NAI's CarnoSyn beta-alanine business.  To be clear, NAI's claims in this case arise from the use by Defendants, or contract manufacturers acting on their behalf, of beta-alanine that was not licensed by, or purchased from, NAI or its prior distributor.

## PARTIES

2.     NAI is a Delaware corporation with its principal place of business in Carlsbad, California.

3.     Allmax is a Canadian corporation with its principal place of business located at 4576 Yonge St., Suite 509, North York, Ontario, Canada.

4.     HBS is a Canadian corporation with its principal place of business located at 4576 Yonge St., Suite 509, North York, Ontario, Canada. It also has an office in Carson City, Nevada.

---

[1] The Court's Order entered June 26, 2017 dismissed NAI's patent infringement claims based on 35 U.S.C. § 101 and granted NAI leave to file a Second Amended Complaint on the trademark and civil conspiracy claims.  NAI repeats its patent infringement claims here to ensure the issue is preserved for appeal.

5.     The true names and capacities, whether individual, corporate, associate or otherwise of defendants sued herein as DOES 1-100, inclusive, are unknown to NAI at the present time and NAI therefore sues such defendants by fictitious names.  NAI will amend this complaint, by leave of Court if necessary, to show such true names and capacities when the same have been ascertained.  Such defendants will include contract manufacturers and brands that do not buy beta-alanine from NAI and/or commingle beta-alanine and then use it to manufacture dietary supplements for brands, offer to sell or sell the finished products to end users, and/or the end users.

## JURISDICTION AND VENUE

6.     This is an action for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., common law trademark infringement, copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*., and patent infringement arising under Title 35 of the United States Code, 35 U.S.C. §§ 1, *et seq*.

7.     Exclusive subject matter jurisdiction over this action is conferred upon the Court pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121(a), and supplemental jurisdiction under 28 U.S.C. § 1367.  Jurisdiction for NAI's common law claims also exists under 28 U.S.C. § 1332.  Diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     The exercise of jurisdiction over Allmax comports with the laws of the State of California and the constitutional requirements of due process because Allmax transacts business and offers to transact business within California.  It operates an interactive website that is accessible by citizens and residents of California.  *See* Ex. A (Allmax Homepage).  For example, the website contains a copyright notice for Allmax. Further, part of its website states:  "At ALLMAX Nutrition, we are committed to protecting your privacy and want you to feel comfortable using our website.  Please take a moment to read this Statement to understand how ALLMAX Nutrition collects, uses and discloses the personal information you provide to us."  Allmax goes on to say:  "If you would like us to update your contact information or

1  remove your name from our mailing list, or if you have any questions or concerns

2  about ALLMAX Nutrition's privacy practices or about your personal information,

3  please contact us at support[at]allmaxnutrition[dot]com." *See*

4  http://www.allmaxnutrition.com/privacy-policy (last visited Oct. 18, 2016).  The

5  "terms of use" portion of the website states, in part:

6     By using allmaxnutrition.com you agree to be bound by these terms,

7     which shall take effect immediately on your first use of

8     allmaxnutrition.com.  If you do not agree to be bound by all of the

9     following terms please do not access, use and/or contribute to

10    allmaxnutrition.com.

11    ALLMAX Nutrition may change these terms from time to time and so

12    you should check these terms regularly.  Your continued use of

13    allmaxnutrition.com will be deemed acceptance of the updated or

14    amended terms.  If you do not agree to the changes, you should cease

15    using this website.

16  *See* http://www.allmaxnutrition.com/terms-of-use (last visited Oct. 18, 2016).  Allmax

17  also sells and offers to sell its products through retailers located in California,

18  including without limitation, GNC and Vitamin Shoppe retail stores in the Southern

19  District of California.  *See* Ex. B (List of American Retailers from Website).  Allmax

20  represents to the public that it creates dietary supplement products offered for sale.

21  Further, HDS' contacts with California are properly attributable to Allmax.  HDS and

22  Allmax conduct their business as a single enterprise.  They have the same address,

23  including suite number.  Further, Allmax has represented to this Court that it is a party

24  to CarnoSyn Beta-Alanine License Agreements with NAI, which is located in

25  California.  The documents contain a California choice of forum provision.

26        9.     The exercise of jurisdiction over HBS comports with the laws of the State

27  of California and the constitutional requirements of due process because HBS

28  transacts business and offers to transact business within California.  It is a wholly-

owned subsidiary or affiliate of Allmax.  HBS distributes Allmax's line of products, including the products at issue here, in the United States, for purchase at a variety of retailers in California.  Further, HBS has represented to this Court that it is a party to CarnoSyn Beta-Alanine License Agreements with NAI, which is located in California.  The documents contain a California choice of forum provision.

10.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (3).

## FACTS

**A.   NAI**

11.  NAI, a publicly traded company, is a leading formulator, manufacturer, marketer and supplier of nutritional supplements and provides strategic partnering services to its customers.  NAI offers a wide range of innovative nutritional products and services to its clients including:  scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and evaluation, marketing management and support, packaging and delivery system design, regulatory review and international product registration assistance.  NAI also funds, sponsors, directs and participates in research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives.  The comprehensive services NAI offers and financial support for research have established NAI as an innovator in the field of nutritional science and increased the goodwill associated with NAI-authorized products.

12.  NAI owns 46 patents in the United States and foreign countries related to beta-alanine.  Beta-alanine is a non-essential amino acid.  In numerous scientific studies, CarnoSyn beta-alanine, when used as a dietary supplement, has been proven to delay the onset of fatigue in muscle cells, thereby eliminating muscle fatigue and soreness and has been shown to improve athletic performance.

13.  One of the inventors of the patents assigned to NAI, Dr. Roger Harris, has been recognized for his work in nutritional supplements, particularly his work in

several studies using CarnoSyn beta-alanine.  He has a lifetime achievement award from the International Society of Sports Nutrition.

14.     NAI imports and sells beta-alanine to customers in the United States engaged in interstate and foreign commerce.  Its beta-alanine is branded and sold under the trademark CarnoSyn, which was first used in commerce in 2004.  NAI owns the entire right, title and interest to multiple trademarks, including the CarnoSyn trademark, Serial No. 78372235 and Registration No. 3146289, a true and correct copy of which is attached as Ex. C and incorporated herein by reference, the CarnoSyn Beta Alanine trademark, Serial No. 85606462 and Registration No. 4271217, a true and correct copy of which is attached as Ex. D and incorporated herein by reference, and the CarnoSyn Carnosine Synthesizer trademark, Serial No. 78372289 and Registration No. 3091092, incorporated herein by reference.  NAI also has common law trademark rights, including rights to CarnoSyn, CarnoSyn Beta Alanine, CarnoSyn Carnosine Synthesizer, and Build A Better Muscle, among others.  References to "CarnoSyn®" herein are to NAI's registered and common law trademarks, collectively.

15.     Prior to April 1, 2015, CarnoSyn® was sold by NAI's sole authorized distributor, Compound Solutions, Inc. ("CSI").  After that date, NAI began selling CarnoSyn® directly to customers.

16.     NAI maintains a website to promote and encourage sales of its branded CarnoSyn® beta-alanine at www.carnosyn.com, the content of which is incorporated herein by reference.  The contents of the website are protected by copyrights held by NAI and the website includes a copyright notice.  A true and correct copy of NAI's copyright registrations (Nos. TX 8-188-444 and TX 8-187-689) are attached as Exs. E and F and incorporated herein by reference.

17.     NAI has invested and continues to expend substantial funds to build, expand and promote sales of CarnoSyn® beta-alanine.  NAI pursues legal avenues to protect its CarnoSyn® brand and intellectual property portfolio.

18.     When NAI sells CarnoSyn® beta-alanine to customers, the customers receive a scientifically-tested recognized product, a license to NAI's trademarks, and patents, and are indemnified against product liability.  The license extends only to the CarnoSyn® beta-alanine purchased from NAI, and does not extend to CarnoSyn® beta-alanine that contains or is mixed or comingled with any non-trademarked beta-alanine.  The customers do not, however, receive any authorization or license to use NAI's copyrights.

19.     By statute, NAI's U.S. patents are presumed valid.  35 U.S.C. § 282.  None of those patents have been held invalid by a court prior to this Court's interlocutory June 26, 2017 Order.

20.     NAI is the owner of U.S. Patent No. 5,965,596 ("the '596 patent"), issued on or about October 12, 1999, entitled "Methods and compositions for increasing the anaerobic working in tissues."  A copy of the '596 patent is attached as Ex. G and incorporated by reference.

21.     NAI is the owner of U.S. Patent No. 7,504,376, issued on or about March 17, 2009, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues."  A copy of the patent is attached as Ex. H and incorporated by reference.

22.     NAI is the owner of U.S. Patent No. 7,825,084 ("the '084 patent"), issued on or about November 2, 2010, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues."  A copy of the '084 patent is attached as Ex. I and incorporated by reference.

23.     NAI is the owner of U.S. Patent No. RE45,947 ("the '947 patent"), issued on or about November 2, 2010, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues."  A copy of the '947 patent is attached as Ex. J and incorporated by reference.

24.     Claim 1 of the '596 patent is directed to a method of regulating the hydronium ion concentration in human tissue by providing an amount of beta-alanine

to the blood or blood plasma effective to increase beta-alanylhistidine dipeptide (carnosine) synthesis in the human tissue, exposing the human tissue to the blood or blood plasma and thereby increasing the carnosine in the human tissue.

25.    Claim 1 of the '084 patent is directed to a human dietary supplement comprising beta-alanine in a unit dosage of between 0.4 grams to 16 grams.

26.    Claim 34 of the '947 patent is directed to a human dietary supplement for increasing human muscle tissue strength comprising a mixture of creatine, a carbohydrate and free amino acid beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide, wherein the human dietary supplement does not contain a free amino acid L-histidine, wherein the free amino acid beta-alanine is in an amount that is from 0.4 g to 16.0 g per daily dose, wherein the amount increases the muscle tissue strength in the human, and wherein the human dietary supplement is formulated for one or more doses per day for at least 14 days.

27.    Claim 6 of the '376 patent is directed to a human dietary supplement comprising glycine; and a) an amino acid selected from the group consisting of a beta-alanine, an ester of a beta-alanine, and an amide of a beta-alanine, or b) a di-peptide selected from the group consisting of a beta-alanine di-peptide and a beta-alanylhistidine di-peptide.

**B.    Defendants**

28.    Allmax offers to sell and sells bodybuilding and sports nutrition supplements in the United States, Canada and across the world.  Some of these supplements contain beta-alanine.  Defendants maintain and operate a website at www.allmaxnutrition.com, the content of which is incorporated herein by reference, to promote the sale of products.

29.    HBS is the exclusive distributor of Allmax branded products in the United States, including supplement products containing beta-alanine.

30.    Allmax and HBS collectively have represented to courts in other cases that:

1   [Allmax and HBS] are pioneers in the nutritional supplement industry.

2   Established on the principle that nutritional supplement products should

3   be grounded in science, innovation, quality and results, [Defendants]

4   manufacture, market and sell the Allmax Nutrition branded line of

5   nutritional supplements.  Every Allmax Nutrition supplement embodies

6   [Defendants'] dedication to this core value, creating a revolutionary line

7   of supplements that thousands of health-conscious consumers have come

8   to know and trust.

9   Ex. K, ¶ 8 (Complaint in *Allmax Nutrition Inc. and HBS Int'l Corp. v. Bioexx*

10  *Specialty Proteins Ltd.*, No. 11-CV-449 (D. Me.) (incorporated herein by reference));

11  *see also* Ex. L, ¶¶ 8-20 (Complaint in *Allmax Nutrition Inc. and HBS Int'l Corp. v.*

12  *Rivalus, Inc. No.* 2:13-cv-379 (D. Me.) (incorporated herein by reference)).

13       31.    Allmax also represents to the public that it creates, offers for sale and

14  supplies dietary supplements. For example, in its Fall 2015 catalog, Allmax represents

15  that:

16       WHY ALLMAX?

17       **Rigorous research standards yield powerful results**

18       This has resulted in a line of products that has gained the trust of

19       thousands of dedicated professional athletes, amateur athletes, coaches,

20       trainers and those who have chosen to make high quality nutrition a part

21       of their life.

22

23       WE BELIEVE in dedicating ourselves to strict policies of quality in

24       manufacturing.  We maintain the absolute highest grade of

25       manufacturing for all our products – NSF certified, cGMP compliant and

26       government-inspected facilities featuring state-of-the-art conditions with

27       sealed air-pressurized chambers.

28

**A healthy obsession with purity, potency and effective formulas**

WE ARE OBSESSIVE about testing and analyzing each and every batch of our product.  We go well beyond the call of duty to ensure that what we put on the label is precisely what is in the product and in the required amounts and concentrations.  We employ independent, 3rd party laboratories to rigorously test every product to ensure 100% validity, potency and safety.  If even one of these strict standards is not met, the product is rejected and never makes it past this stage.  There are cheaper and easier ways to create the supplements you consume, but we do not believe in anything less, nor will we settle for it.

**High quality products provide the best results**

OUR CUSTOMERS have had a healthy obsession with our products for more than a decade because they get results.  They understand the importance of following a solid diet and training hard in combination with our high quality products.  We understand that our customers demand more, which is why we consistently supply cutting-edge supplements to help them achieve their goals as quickly and effectively as possible.

**The ALLMAX Nutrition® brand stands for Science, Innovation, Quality and Results**

We continue to quietly grow through word-of-mouth recommendation, as satisfied athletes and trainers continue to tell others about their impressive results.

Ex. M at 2.

32.    The products at issue are offered to and may be purchased and used by citizens of California.

33.     Defendants sell and/or offer to sell Razor 8 Blast Powder, which contains beta-alanine.  Ex. M (Catalog page for Razor 8 Blast Powder).

34.     Defendants represent that the Razor 8 Blast Powder is licensed under one or more of U.S. Patent Nos. 5,965,596 and 6,426,361, each of which is owned by NAI.  *Id.*

35.     Defendants also acknowledge that NAI is the owner of the  trademark CarnoSyn®.  *Id.*

36.     Defendants' website for the Razor 8 Blast Powder product states that it contains 425mg of CarnoSyn® beta-alanine.  Ex. N (Razor 8 webpage).

37.     Defendants' website for the Razor 8 Blast Powder product has a link to "Science," which directs the viewer to another page.  This other page describes the benefits of taking beta-alanine and also uses NAI's trademark and copyrights.  Ex. O (Razor 8 science).

38.     Defendants sell and/or offer to sell C-VOL (CREMAGNAVOL®), which contains beta-alanine.  Ex. M (Catalog page for C-VOL and CREMAGNAVOL®).

39.     The C-VOL product also contains creatine and carbohydrate.  *Id.*

40.     The C-VOL product does not contain L-histidine.  *Id.*

41.     Defendants represent that the CREMAGNAVOL® product is licensed under one or more of U.S. Patent Nos. 5,965,596 and 6,426,361, each of which is owned by NAI.  *Id.*

42.     Defendants also acknowledge that NAI is the owner of the  trademark CarnoSyn®.  *Id.*

43.     Defendants'  website for the C-VOL product states that it contains 800mg of CarnoSyn® beta-alanine.  Ex. P (C-VOL webpage).

44.     Defendants sell and/or offer to sell Vitastack, which contains beta-alanine.  Ex. M (Catalog page for Vitastack).

45.     The Vitastack product also contains glycine.  *Id.*

46.     Defendants sell and/or offer to sell MUSCLEPRIME®, which contains beta-alanine.  Ex. M (Catalog page for Muscleprime).

47.     Defendants represent that the MUSCLEPRIME® product is licensed under one or more of U.S. Patent Nos. 5,965,596 and 6,426,361, each of which is owned by NAI.  *Id.*

48.     Defendants also acknowledge that NAI is the owner of the  trademark CarnoSyn®.  *Id.*

49.     Defendants state that the "Patented CarnoSyn® Beta-Alanine in MUSCLEPRIME® promotes greater concentrations of muscle Carnosine resulting in increases in STRENGTH, POWER and MUSCLE MASS."  Ex. M (Catalog at page 26).

50.     Defendants also state that beta-alanine has been shown to increase anaerobic endurance and delay the onset of fatigue, "letting you train with greater intensity and duration."  *Id.*

51.     Defendants' website for MUSCLEPRIME® states the product contains 0.6g of CarnoSyn® beta-alanine.  Ex. Q (Muscleprime website).

52.     Defendants' website for the MUSCLEPRIME® product has a link to "key factors," which directs the user to another page.  This other page describes the benefits of taking beta-alanine and also uses NAI's trademark and copyrights.  Ex. R (Muscleprime key factors).

53.     Defendants sell and/or offer to sell beta-alanine.  Ex. M (Catalog at page 34).

54.     Defendants' website for beta-alanine uses NAI's trademark and copyrights.  Ex. S (beta-alanine webpage).

55.     Defendants' website for beta-alanine has a link to "carnosyn," which directs the user to another page.  This other page describes the benefits of taking beta-alanine and also uses NAI's trademark and copyrights.  Ex. T (beta-alanine carnosyn).

56.     Defendants' website for beta-alanine has a link to "science," which directs the user to another page.  This other page describes the benefits of taking beta-alanine and also uses NAI's trademark and copyrights.  Ex. T (beta-alanine science).

**C.      Defendants Use Of Beta-Alanine**

57.     Defendants have never directly purchased genuine CarnoSyn® beta-alanine from NAI or CSI for use as an ingredient in the accused products.

58.     Defendants, through certain contract manufacturers acting on their behalf, purchased some genuine CarnoSyn® beta-alanine from NAI or CSI for use as an ingredient in the accused products.

59.     Defendants, through certain contract manufacturers acting on their behalf, purchased non-CarnoSyn® beta-alanine from entities other than NAI or CSI for use as an ingredient in the accused products.  According to their Initial Disclosures, a true and correct copy of which is attached as Ex. V and incorporated by reference, three of those contract manufacturers, NutraMed, Inc., Ruspak Corp., and Millhaven do not have license agreements with NAI and have not purchased licensed CarnoSyn® from NAI or CSI. As such, the accused products made by those manufacturers do not contain genuine CarnoSyn® beta-alanine that is not comingled or mixed with non-CarnoSyn® beta-alanine.

60.     Further, Defendants' other contract manufacturers named in the Initial Disclosures have entered into CarnoSyn® license agreements with NAI.  However, contract manufacturers, by definition, make dietary supplement products for a number of different brand companies.  A contract manufacturer could buy licensed CarnoSyn® beta-alanine from NAI for use in one branded company's product and buy non-CarnoSyn® beta-alanine from a different supplier for use in other company's products.  With the exception of Arnet Pharmaceutical and Capstone Nutrition, Defendants' other contract manufacturers named in the Initial Disclosures have not informed NAI that they are making products for Defendants or that they are buying CarnoSyn® for use in Defendants' products.

61.     Defendants and their contract manufacturers are required to maintain business records pertaining to, among other things, the source and manufacturing of dietary supplement products under the Dietary Supplement Health and Education Act of 1994, Pub. L. 103-417 (1994).  They are also required to maintain records pursuant to the Public Health Security and Bioterrorism Preparedness and Response Act of 2002. Pub. L. 107-188, 116 Stat. 594 (2002).  Thus, discovery from the Defendants and their contract manufacturers will provide greater factual detail as to the extent of Defendants' use of non-CarnoSyn® beta-alanine in the accused products.

62.     Defendants have made, offered for sale, and sold accused products that (a) do not contain 100 percent genuine CarnoSyn® beta-alanine, and/or (b) contain CarnoSyn® beta-alanine that is comingled or mixed with non-CarnoSyn® beta-alanine.

63.     Defendants' improper use of the CarnoSyn® trademark as alleged above in connection with the accused products that either do not wholly contain genuine CarnoSyn® beta-alanine or contain a mixture of CarnoSyn® and non-CarnoSyn® beta-alanine is likely to cause consumer confusion, mistake, and deception and constitutes federal and common law trademark infringement.  CarnoSyn® is a recognized brand name, supported by scientific research and known for its quality. *See generally* http://www.carnosyn.com.  Defendants have advertised its Beta-Alanine product based on "The CarnoSyn Advantage."  Ex. T.  Defendants quote the named inventor on the patents covering CarnoSyn®, Dr. Harris, as saying:  "The patented use of beta-alanine has resulted in a significant advantage in muscle performance technology.  CarnoSyn beta-alanine has been proven effective in over 20 scientific studies, 15 of which have been published in peer reviewed journals." *Id*.  Defendants also promote that CarnoSyn is covered by:  "12 global patents.  Over 20 clinical studies. 80% increase in muscle carnosine levels. 4.3 times faster peak rowing speeds. More than 16% increase in physical working capacity.  Zero banned substances." *Id*.

64.     The ability to purchase genuine CarnoSyn® is important to customers. For example, Nutrabolt, a market leader in sports nutrition products recently announced it entered into an extended license agreement with NAI.  *See* Ex. W (June 26, 2017 news release), incorporated here by reference.  The release wrote that "Nutrabolt is proud to include the patented, trademarked, and clinically studied CarnoSyn® beta-alanine in several of its products, including its award winning C4® brand of pre-workout products."  *Id*.  It went on to emphasize that:  "As the only clinically studied form of beta-alanine, CarnoSyn® beta-alanine has been shown to provide numerous performance enhancing benefits including an increase in muscular endurance, making it the perfect addition to a pre-workout product engineered to improve performance.  Nutrabolt is proud to display the CarnoSyn® logo on its C4® and other product labels and to continue to conduct University based clinical studies on the performance enhancing benefits of its formulas containing CarnoSyn® beta-alanine.  Nutrabolt is proud to partner with NAI, who has a long history of investing significant monies funding research and brand awareness related to beta-alanine around the world, as well as vigorously protecting its intellectual property rights against infringers, providing further value to its licensees."  *Id*.  The use of the CarnoSyn® trademark on or about products that do not wholly consist of the genuine article is likely to cause confusion, mistake, or deception as to, among other things, the source, origin, and nature of the products.

**D.     Contacts With Allmax**

65.     On or about June 15, 2016, NAI's counsel sent a letter to Allmax by overnight courier addressed to its President, Michael Kichuk ("Kichuck").  A copy of the letter is attached as Ex. U and is incorporated herein by reference.  Among other things, the letter stated that Allmax does not purchase its beta-alanine product from NAI and therefore has no license rights to NAI's patents or the CarnoSyn® trademark.  The letter further demanded information from Allmax regarding its use of beta-alanine:  "NAI requests that you provide answers to the following questions by June

22, 2016.  Please provide the following information for the relevant products for the past 24 months:  (1) product sales; (2) identification of all manufacturers; (3) amount of beta-alanine you have purchased; (4) identification of the supplier of all beta-alanine; and (5) the cost of beta-alanine you have purchased."  Ex. U.  To date, Defendants did not provide such information to NAI.

66.    On or about July 5, 2016, Kichuk contacted NAI to find out who to discuss the issues raised in the cease and desist letter with at NAI.  He was told to speak to Kenneth Wolf, NAI's President.

67.    NAI also learned that contract manufacturers Arnet and Capstone had been manufacturing products containing beta-alanine for Allmax for some time.

68.    NAI filed its complaint for trademark, copyright and patent infringement and provided Allmax with a courtesy copy.  Allmax's counsel sent an email to NAI's counsel on or about July 12, 2016, writing, in pertinent part:

> Thank you for providing a courtesy copy of the complaint against
> Allmax Nutrition Inc.  I have also obtained the extensive exhibits
> referenced in the complaint and have passed the material along to my
> client with your inquiry regrading exploring a pre-service resolution.
> My client's initial response is that it is interested in exploring a
> resolution to this matter pre-service, but it obviously needs some time to
> review the complaint and associated exhibits to understand the basis for
> NAI's allegations.

69.    Counsel for NAI and Allmax later had a telephone discussion in which NAI requested information from Allmax on its products and use of beta-alanine.  On or about August 11, 2016, Allmax's counsel left a voice message for NAI's counsel saying, in pertinent part:

> This is Sean Sweeney and I am calling regarding NAI and Allmax
> Nutrition.  I wanted to follow up after our phone conversation.  I finally
> had a chance to touch base with my contact just now.  First of all they

1   don't have the documentation or the bulk of the documentation that

2   you're looking for at this point and one of the things that is becoming a

3   significant problem for them is that NAI has apparently scared most of

4   the copackers to the point where they are not really willing to provide a

5   lot of information and so I'm not sure how my client is going to get

6   around that.

7   At no time during any of these communications did Allmax or its representatives

8   suggest that:  (1) Defendants were not engaged in promoting, offering to sell and

9   selling dietary supplements, including the products at issue here, that contained non-

10  CarnoSyn® non-CarnoSyn® beta-alanine; (2) Defendants and/or their contract

11  manufacturers had any license agreement with NAI; or (3) that Defendants and/or

12  their contract manufacturers purchased CarnoSyn® beta-alanine from CSI or NAI.

13      70.    Defendants first suggested that they had license agreements with NAI in

14  a letter its litigation counsel sent to NAI's counsel on April 18, 2017.  A copy of the

15  letter is attached as Ex. X and is incorporated herein by reference.  The letter contends

16  that on November 3, 2014, CSI confirmed the existence of a CarnoSyn® license

17  agreement.

18      71.    The letter also contends that on February 25, 2016, NAI wrote to

19  Defendants that NAI could not find a record of a license agreement between NAI and

20  Defendants.  The letter further states that, acting on behalf of Defendants, Mark

21  Ragotte ("Ragotte") signed a CarnoSyn® license agreement and returned it to NAI.

22  In their motions to dismiss and for judgment on the pleadings, Defendants represented

23  to the Court that they were parties to 2014 and 2016 license agreements with NAI.

24      72.    The 2016 document attached to Ex. X is signed by Ragotte as HBS'

25  Chief Operating Officer and dated June 7, 2016.  The document does not contain a

26  signature on behalf of NAI.

27      73.    The opening paragraph of NAI's license agreements all provide that they

28  are "made and entered into as of the last signature below (the 'Effective Date')…."

SECOND AMENDED COMPLAINT

74.     No representative of NAI signed a license agreement with Defendants in 2016.  In fact, NAI's business records show that it did not execute any license agreement with Defendants and that "Allmax is an infringer."  Ex. Y (June 10, 2016 emails, incorporated herein by reference).  NAI has not subsequently executed a license with Defendants.

**E.     Defendants' Copyright Infringement**

75.     Defendants use the contents of NAI's website on its own website as alleged above.  *See, e.g.,* Exs. O, R, S, T.

76.     The contents of NAI's website is protected by copyright, including registered copyrights.

77.     Defendants are not authorized to use NAI's copyright.

**F.     Defendants' Patent Infringement**

78.     Defendants sell sports nutrition supplements that contain beta-alanine as alleged above.  *See* Exs. M-T (copy of material from website and catalog).

79.     The Razor 8 Blast Powder product infringes at least claim 1 of the '084 patent because it contains between 0.4 and 16 grams of beta-alanine per unit dosage.  Exs. M-O (Razor 8 Blast Powder catalog page and website).

80.     The Razor 8 Blast Powder product infringes at least claim 34 of the '947 patent because it contains beta-alanine between 0.4 and 16 grams per daily dose, creatine and carbohydrate, does not contain L-histidine and is formulated for one or more doses per day for at least 14 days.  Exs. M-O (Razor 8 Blast Powder catalog page and website).

81.     The C-VOL product infringes at least claim 1 of the '084 patent because it contains between 0.4 and 16 grams of beta-alanine per unit dosage.  Exs. M, P (C-VOL catalog page and website).

82.     The C-VOL product infringes at least claim 34 of the '947 patent because it contains beta-alanine between 0.4 and 16 grams per daily dose, creatine and

1 carbohydrate, does not contain L-histidine and is formulated for one or more doses per

2 day for at least 14 days.  Exs. M, P (C-VOL catalog page and website).

3      83.    The Vitastack product infringes at least claim 1 of the '084 patent

4 because it contains between 0.4 and 16 grams of beta-alanine per unit dosage.  Ex. M

5 (Vitastack catalog page).

6      84.    The Vitastack product infringes at least claim 6 of the '376 patent

7 because it contains glycine and the amino acid beta-alanine. *Id*. (Vitastack catalog

8 page).

9      85.    The MUSCLEPRIME® product infringes at least claim 1 of the '084

10 patent because it contains between 0.4 and 16 grams of beta-alanine per unit dosage.

11 Exs. M, Q (Muscleprime catalog page and website).

12      86.    The beta-alanine product infringes at least claim 1 of the '084 patent

13 because it contains between 0.4 and 16 grams of beta-alanine per unit dosage.  Exs.

14 M, R (beta-alanine catalog page and website).

15      87.    Defendants make statements in association with the promotion of its

16 beta-alanine product that induce infringement of at least claim 1 of the '596 patent.

17 For example, Defendants state that "beta-alanine is clinically proven to increase

18 muscle carnosine for long periods, [and] increase muscle buffering capacity. . . ."  Ex.

19 S.  They also state that "Muscle carnosine is the major buffering agent, or neutralizer,

20 of hydronium ions that lead to muscle fatigue and failure.  By increasing the amount

21 of carnosine in the muscle, CarnoSyn beta-alanine both increases an athlete's peak

22 performance and speeds muscle recovery."  Ex. T (beta-alanine webpage Science).

**COUNT I**

**(Lanham Act § 32)**

25      88.    The foregoing allegations are incorporated by reference.

26      89.    Defendants' products are used, sold, and/or offered for sale in interstate

27 and foreign commerce.

28      90.    NAI owns the registered trademarks, a fact Defendants have not disputed.

91.     In connection with its goods or services that do not contain genuine and licensed beta-alanine purchased from CSI or NAI Defendants have used a reproduction, counterfeit, copy, or colorable imitation of one or more of NAI's registered trademarks without NAI's authorization or consent.

92.     Defendants knowingly and willfully misrepresented to the public, *inter alia*, the facts alleged above.

93.     Defendants used NAI's CarnoSyn® trademark without NAI's consent or license as alleged above, knowing that such act is intended to be used to cause confusion, or to cause mistake, or to deceive.

94.     Defendants' infringing use of the trademark is likely to cause confusion, or to cause mistake, or to deceive.

95.     Defendants are jointly and severally liable for trademark infringement.

96.     By reason of Defendants' statements and conduct, they have willfully violated section 32 of the Lanham Act, 15 U.S.C. § 1114, and NAI has suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits that it would have made but for Defendants' acts.

97.     NAI has been irreparably harmed by Defendants' acts in violation of the Lanham Act and has suffered damages in an amount to be determined at trial.

## COUNT II

### (Lanham Act § 43(a))

98.     The foregoing allegations are incorporated by reference.

99.     Defendants' products are used, sold, and/or offered for sale in interstate and foreign commerce.

100.    NAI owns the Carnosyn® trademarks, a fact Defendants have not disputed.

101.    In connection with its goods or services, Defendants have used one or more words, terms, names, symbols, or devices, alone or in combination, as well as false designations of origin, false or misleading descriptions or representations of fact,

which are (a) likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of them with NAI, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities by another person, and/or (b) in commercial advertising or promotion (including without limitation its website, promotional materials, emails and in trade publications), and Defendants misrepresent the nature, characteristics, qualities, or geographic origin of its or NAI's goods, services, or commercial activities.

102.   Defendants knowingly and willfully misrepresented to the public, *inter alia*, the facts alleged above.

103.   Defendants' commercial messages and statements are either literally false or literally true but ambiguous and have the tendency to deceive the market, the public, consumers, potential consumers and competitors of NAI.

104.   The misrepresentations were material and made in bad faith for the purpose of deceiving the market, the public, consumers, potential consumers and competitors of NAI and harming its competition, including plaintiff.

105.   The misrepresentations deceive or are likely to deceive the market, the public, consumers, potential consumers and competitors.  Further, the misrepresentations are likely to influence the purchasing decisions of others and have caused injury or are likely to do so.

106.   Defendants are jointly and severally liable for trademark infringement.

107.   By reason of Defendants' statements and conduct, they have willfully violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and NAI has suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits that it would have made but for Defendants' acts.

108.   NAI has been irreparably harmed by Defendants' acts in violation of the Lanham Act and has suffered damages in an amount to be determined at trial.

1

## COUNT III

2

### (Common Law Trademark Infringement)

3      109.   The foregoing allegations are incorporated by reference.

4      110.   Defendants' products are used, sold, and/or offered for sale in interstate

5  and foreign commerce.

6      111.   NAI owns common trademarks as alleged above.

7      112.   In connection with its goods or services that do not contain genuine and

8  licensed beta-alanine purchased from CSI or NAI Defendants have used a

9  reproduction, counterfeit, copy, or colorable imitation of one or more of NAI's

10  common law trademarks without NAI's authorization or consent.

11      113.   Defendants knowingly and willfully misrepresented to the public, *inter*

12  *alia*, the facts alleged above.

13      114.   Defendants used NAI's common law trademarks without NAI's consent

14  or license as alleged above, knowing that such act is intended to be used to cause

15  confusion, or to cause mistake, or to deceive.

16      115.   Defendants' infringing use of the trademarks is likely to cause confusion,

17  or to cause mistake, or to deceive.

18      116.   Defendants are jointly and severally liable for trademark infringement.

19      117.   By reason of Defendants statements and conduct, they have willfully

20  infringed the trademarks and NAI has suffered, and will continue to suffer damage to

21  its business, reputation, and good will and has lost sales and profits that it would have

22  made but for Defendants' acts.

23      118.   NAI has been irreparably harmed by Defendants' acts of trademark

24  infringement and has suffered damages in an amount to be determined at trial in

25  excess of $75,000, exclusive of interest and costs.

26

## COUNT IV

27

### (Copyright Infringement)

28      119.   The foregoing allegations are incorporated by reference.

120.   NAI's work is an original literary, design and pictorial work of authorship pursuant to 17 U.S.C. § 102(a).  The copyrights in NAI's work are valid.

121.   Defendants had access to NAI's work.

122.   Defendants copied and distributed and used without authorization or permission NAI's work, including on exhibits attached hereto.

123.   Defendants willfully violated, and continues to willfully violate, NAI's exclusive right to its protected copyright works in violation of 17 U.S.C. § 501.

124.   Defendants profited from its infringement of NAI's copyrights.

125.   NAI has been irreparably harmed by Defendants acts of infringement and has suffered damages in an amount to be determined at trial.

## COUNT V

### (Patent Infringement)[2]

126.   The foregoing allegations are incorporated by reference.

127.   Defendants have made, used, sold, and/or offered for sale products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '084 patent, '376 patent and the '947 patent and will continue to do so unless enjoined therefrom.

128.   Defendants have, through the sale of its products and promotion of such products, including instructions for the use thereof, induced others (*i.e.*, the end users of its accused products) to infringe literally or under the doctrine of equivalents, one or more claims of the '596 patent.

129.   Defendants' infringement has been willful.

130.   NAI has been irreparably harmed by Defendants' acts of infringement and has suffered damages in an amount to be determined at trial.

---

[2] *See* footnote 1, *supra*.

SECOND AMENDED COMPLAINT

## COUNT VI

### (Civil Conspiracy)

131. The foregoing allegations are incorporated by reference.

132. At all relevant times, Allmax, HBS, one or more of its contract manufacturers (including NutraMed, Inc., Ruspak Corp., and Millhaven) and DOES defendants have acted in concert, agreed, combined and conspired for an unlawful purpose or for a lawful purpose by unlawful means, *i.e.*, to have made, sell and offer for sale products containing beta-alanine not purchased from NAI that infringe NAI's CarnoSyn® trademark.

133. Defendants have committed one or more overt tortious or illegal acts of trademark infringement in furtherance of their conspiracy, as alleged herein.

134. An overt act by one member of the conspiracy is chargeable to all members.

135. Defendants' agreement and overt acts were done intentionally and with malice.

136. NAI did not authorize Defendants to use its registered or common law trademark rights for products that did not contain CarnoSyn® beta-alanine and which were made from beta-alanine purchased from a source other than NAI or CSI.

137. As a result of its civil conspiracy, Defendants are jointly and severally liable for trademark infringement.

138. As a direct and proximate result of the civil conspiracy, NAI has been injured by Defendants in an amount to be proven at trial in excess of $75,000, exclusive of interests and costs.

## REQUEST FOR RELIEF

NAI respectfully requests that this Court enter judgment against Defendants and that the following relief be granted:

a.    judgment that Defendants have violated sections 32 and 43(a) of the Lanham Act;

1    b.    treble damages and statutory damages;

2    c.    a preliminary and permanent injunction against continued violations of

3          the Lanham Act;

4    d.    punitive damages allowed by law;

5    e.    attorneys' fees as allowed by law, including without limitation, 15 U.S.C.

6          § 1117(a);

7    f.    judgment that Defendants have infringed NAI's common law trademark

8          rights;

9    g.    judgment that Defendants have violated 17 U.S.C. § 501;

10   h.    statutory damages pursuant to 17 U.S.C. § 504;

11   i.    reasonable costs and attorneys' fees pursuant to 17 U.S.C. § 505

12   j.    a preliminary and permanent injunction against continued violations of

13         NAI's copyrights;

14   k.    judgment that Defendants have infringed one or more claims of the '596,

15         '084, '376 and '947 patents;

16   l.    judgment that Defendants' infringement of one or more claims of the

17         '596, '084, 376 and '947 patents was willful;

18   m.    injunction against continued infringement (35 U.S.C. § 283);

19   n.    damages for past infringement (35 U.S.C. § 284);

20   o.    imposition of a constructive trust on all proceeds from the sale of accused

21         products;

22   p.    increased and trebled damages for willful infringement (35 U.S.C. §

23         284);

24   q.    judgment for civil conspiracy in an amount to be determined at trial in

25         excess of $75,000.

26   r.    costs pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

27   s.    such other relief as the Court deems just and appropriate under the

28         circumstances.

-25-                        Case No. 16-cv-01764-H-AGS

SECOND AMENDED COMPLAINT

1

## **JURY DEMAND**

2          NAI hereby demands a jury trial on all issues so triable.

3

4   Dated:        July 10, 2017                  Respectfully submitted,

5                                               Wilson Turner Kosmo LLP

6

7                                               By: *s/ Frederick W. Kosmo, Jr.*
                                                Wilson Turner Kosmo LLP
8
                                                *Attorneys for Plaintiff Natural*
9                                               *Alternatives International. Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT